## Lorenzo D. Herrick *v.* The Town of Randolph.

The act of the legislature of this state, taxing the buildings on public lands, was not unconstitutional.

The legislature are perpetually bound by the conditions of all grants made by them, the same as individuals; but when a grant is once made, no future legislature can annex new terms or conditions to the tenure or title of the thing granted, even of exemption and privilege to the grantee, which a subsequent legislature may not repeal.

Assumpsit, for money had and received. Plea, non assumpsit, and issue to the court.

The case was submitted in the county court upon the following *statement of facts*, viz. :

By the charter of the town of Randolph, among other public rights, is reserved one full right of land to be kept and leased by the selectmen of the town, for the support of the ministry in said town, forever; which right was located by the proprietors, and, some forty years since, was leased, perpetually, by the selectmen of the town, in separate portions, to several tenants, reserving annual rents for the support of the minis-

try.. The plaintiff is tenant of one of the portions of said right, on which there is a dwelling-house, a saw mill, and other buildings, all built previously to the year 1825, which buildings have been set in the list of said town, and the plaintiff has been compelled to pay taxes thereon to said town to the amount of five dollars.

From these facts the county court decided that the plaintiff was not entitled to recover, and rendered judgment for the defendants, and the plaintiff excepted to the decision.

*Wm. Nutting* and *L. B. Peck*, for plaintiff.

The town had no right to tax the buildings in question, unless they are subjected to taxation by the act of 1825. Lands and buildings, sequestered to pious and charitable uses, were exempted from taxation by a series of statutes, passed prior to 1825. This exemption is found in the earliest legislation of this state, (Slade's State Papers, 298) and was continued down to 1825. Acts of 1787, p. 11. Slade's Comp. Stat. p. 388, § 5. p. 395, § 1. p. 661, § 1. During the existence of this exemption, the town of Randolph was chartered, and the buildings erected. Under these circumstances, we insist that the legislature had no constitutional power to subject the buildings in question to taxation. As well might they have imposed this burden upon the land itself, for the buildings, when erected, became part of the realty. *Eddington* v. *Bowman*, 4 Term. R. 4. The acts which contain the exemption, are in the nature of a contract between the government and the proprietors of Randolph, and those who should take leases of the public lands, that they should be free from taxes. Upon the faith of these laws, it is fair to presume that most of the leases have been taken, and improvements made ; for it is well known that individuals, generally, prefer to purchase lands to which they can obtain a title in fee, rather than lands burdened with an annual rent, and granted only for a term of years.

To overcome this objection, in some measure, and to hold out some inducement to individuals to take leases of the public lands, the acts exempting them from taxation were probably passed. The act of 1825, then, so far as it affects these lands, must be regarded as a violation of that article of the constitution of the United States which declares that no

state shall pass any law impairing the obligation of a contract. ORANGE, March, 1841. *Atwater* v. *Woodbridge,* 6 Conn. R. 223. *Osborne* v. *Humphrey,* 7 Id. 335. *Parker* v. *Redfield,* 10 Id. 490. *Landon* v. *Litchfield,* 11 Id. 251. *Wilson* v. *State of New Jersey,* 2 Peter's Cond. R. 457. *Cong. Society of Poultney* v. *Ashley et al.,* 10 Vt. R. 241. *Trustees of Caledonia Co. Grammar School* v. *Burt,* 11 Vt. R. 632. Herrick v. Randolph.

2. But if the act of 1825 is not liable to the objection taken, we then submit that the provision in this act, upon which the defendants rely, not being retrospective, in terms, it must have a prospective operation, and must be regarded as ap plying to buildings which should be erected after its passage. It may well be presumed that, had the legislature intended to subject buildings to taxation which were erected while the law was in force which exempted them from this burden, and on the faith of which they were probably erected, they would have so declared their intention in express terms. *Couch qui tam* v. *Jeffries,* 4 Burr. 2460. *Williams* v. *Pritchard,* 4 Term. R. 2. *Medford* v. *Learned,* 16 Mass. R. 215. *Brunswick* v. *Litchfield,* 2 Greenleaf, 28. *Dash* v. *Van Kluck,* 7 Johns. R. 477. *Atwater* v. *Woodbridge,* 6 Conn. R. 223. *Thames Man. Co.* v. *Lathrop et al.,* 7 Conn. R. 550. *Society, &c.* v. *Wheeler,* 2 Gallison, 105.

*W. Hebard* and *E. Weston,* for defendants.

The court below decided correctly upon the statement of facts there submitted.

1. A statute law is not unconstitutional unless it is " repugnant," to some part of the constitution. 1 Kent's Com. 408-9.

In the statute of 1825, there is nothing repugnant to any portion of the constitution of this state.

2. This statute is not void for want of equity. The buildings erected upon the public lands, become the private property of the individual, and, like all other property of a private nature, subject to the laws of taxation, and subject to the provision of the ninth article of the declaration of rights.

3. In this statute, there is no violation of any vested right, for all property is understood to be holden and enjoyed, subject to all the changing interests and varied wants and necessities of the public.

4. It is no objection to the constitutionality of a law, that it is retrospective in its operation. *Sommers* v. *Johnson*, 4 Vt. R. 278. *Langdon* v. *Story et al.*, 2 Vt. R. 234. 1 Kent's Com. 427, taxing bank stock.

5. It is always to be presumed that the legislature, in making a law, has regard to the constitution, and therefore courts of law will not decide their acts void, until they are clearly shown to be so. And when the question of constitutional power is even *doubtful*, the act should be sustained.— *Langdon* v. *Story et al.*, 2 Vt. R. 234.

6. This act is not objectionable on the ground that the legislature have exercised *judicial powers*, like the class of cases in this state where the courts have decided the acts unconstitutional.

7. The legislative power is the *sovereign power*,and its acts are the laws of the land, unless they are repugnant to some express *provision* or *prohibition* of the *constitution* ; is of as high authority as the constitution can be, for it is derived from the sovereign power. It is the will of the people. Sovereignty and legislature are convertible terms. One cannot subsist without the other. 1 Bl. Com. 46–47.

8. The statute of 1825 does not conflict with the statute of 1814. The statute of 1825 provides for taxing the buildings on public lands, and the statute of 1814 provides that lands sequestered to public, pious or charitable uses, " shall not be subject to taxation," but does not exempt, in terms, the buildings and other improvements on such lands.

9. But the land on which these buildings stand is not " sequestered " to any " public, pious or charitable use," but is used, like all other improved land, in the ordinary way, for the purpose of private gain. The expression, in the act of 1814, must be supposed to have reference to colleges, meeting-houses, school-houses, and the land and buildings upon which these and other similar buildings are located. Such lands and the buildings are " sequestered to public, pious, and charitable uses," in the strictest and most obvious sense of the term. That act only intended to exempt from taxation such lands as are not productive, being used for a purpose in which the whole public may be supposed to have an equal interest. That is not the case with the land and buildings in question.

ORANGE,
March,
1841.

Herrick
v.
Randolph,

10. But if the meaning of the act of 1814 was to exempt from taxation, all public lands, and the improvements made upon them, under any and all circumstances, and for all time to come, the act itself must clearly be much more *unconstitutional* than the act of 1825. The act of 1825 is based upon the plainest principles of *justice* and *equality*, providing only for an equal " distribution of the public burdens." The act of 1814 is partial in its operation, and makes provision for a supposable case, in which an individual, having and owning the greatest amount of property of any individual in the vicinity, may pay the smallest amount of taxes.

11. But again, this land in question was leased before the act of 1814, and of course, no consideration growing out of that act, entered into the contract of the lease. And the act of 1814, so far as this land is concerned, could be repealed, modified or controlled by any subsequent legislature, without disturbing any vested right, or impairing the obligation of any contract, or committing any breach of implied faith, growing out of said act.

The opinion of the court was delivered by

REDFIELD, J.—If the statute of the general assembly of this state, passed in the year 1825, requiring buildings on public lands to be appraised and set in the list of the occupiers of such lands, was unconstitutional, then the plaintiff is entitled to recover in this action. For the town, having proceeded to appraise such buildings and set them in the list of the plaintiff, and having compelled him to pay taxes on such list, we see no good reason why the money, thus wrongfully taken from the plaintiff, and put into the treasury of the town, might not be recovered in this form of action.

If these lands, sequestered by the legislature to " pious and charitable uses," are perpetually exempt from taxation, we see no reason why the legislature should be permitted to tax buildings, erected upon them by the lessees. If this could be done, it would wholly defeat all the beneficial operation of the exemption. For if the legislature have the right of taxation over any given property or possession, that power is admitted to be unlimited and uncontrollable, except by their own discretion. If they can tax these build-

ings, they can tax them to any extent, even so as to render the use of the land wholly valueless. We think such an exemption, if it exist, should receive a liberal interpretation, and such an enlarged extension as to carry into full effect the object of the grantors, and so as not to defeat, or abridge, the reasonable expectations of the grantees.

We come then to the principal question; was this land, at the time of passing the act in question, made perpetually exempt from taxation? Such an exemption from taxation as would deprive the legislature of the power to tax these lands, could only be claimed on the ground that it did, at the time of the grant, form a condition or else a consideration of such grant. For it is only to that extent that legislative grants have been considered contracts, within the meaning of the United States constitution, prohibiting the states from passing any law " impairing the obligations of contracts." Chief Justice Marshall, in the case of *Dartmouth College* v. *Woodward*, 4 Wheaton, 518, (4 Cond. 539,) says, " the provision of the constitution never has been understood to embrace other contracts than those which respect property, or some objects of value, and confer rights which may be asserted in a court of justice." Similar language was made use of, by the same distinguished jurist, in the case of *Fletcher* v. *Peck*, 6 Cranch, 87, (2 Cond. 308) which is one of the leading cases in the U. S. Supreme Court upon this subject.

Where lands are granted by the legislature to private persons, either natural or artificial, and conditions beneficial to the grantee are annexed to the grant, there can be no good ground of doubt that both the grant and all such conditions are irrevocable; and any act of the legislature repealing such grant, or annulling such conditions, is absolutely void. And it is not perhaps important whether such grant was upon any pecuniary consideration or not. If it was in its terms general and perpetual, and there was no implied limitation, or right of revocation, and the grant was fully executed and accepted, it would not perhaps be important whether it was upon a sale or gift. In the present case there was not, in the terms of the charter of the town of Randolph, any express exemption of this right of land from taxation. There was no act of the legislature, connected with the granting of the charter,

which contained any declaration to that effect. Had this been the case, it would have been of the same effect as if that condition had been contained in the charter of the town. That was the fact in the case of the *State of New Jersey* v. *Willson,* 2 Peters' Cond. R. 457. The state of New Jersey received an equivalent for the land purchased for the Indians, and in consideration of such equivalent passed an express statute, declaring such lands *forever* exempt from " all taxes." To hold, then, that such lands could be subjected to taxation by any future legislature, would be to allow them to rescind one important condition of the grant.

But, in the present case, it is not claimed that any such condition was, in express terms, annexed to the grant.

Neither was there any constitutional, or other general provision of the law, then in force, whereby all lands granted by the state, or by individuals, to pious and charitable uses, were declared perpetually exempt from taxation. The only statute, or law, in force at the time this charter was granted, which is relied upon by the plaintiff, was the general listing law, which provided that ministers of the gospel and the president of the college, " shall have all their property, lying in the same town where they dwell, exempt : " As also shall all lands in the state sequestered to public, pious and charitable uses, be exempted." This enactment is contained in a proviso to the general listing act, which was in force both at the time the charter of Randolph was granted, and when the land in question was leased by the selectmen of that town. Now, it is in vain to say that this is equivalent to a general declaration by the legislature that all such lands should be *forever* exempt from taxation. If there had been such a law in force at the time of the charter, I admit its provisions would have formed conditions of the grant, and the state could not have repealed such conditions, or been allowed to violate them. But any attempt to raise such an inference from such premises, must signally fail. It is not upon any doubtful basis, that any court will feel justified in declaring an act of the legislature unconstitutional. And the fact that this property, at the time the charter of Randolph was granted, was exempt from taxation, argues no more in favor of a perpetual exemption, than the fact that wilderness land has always been exempt from taxation at the time it was granted

by the state, will justify the inference that such lands, by the terms of the grant, were never to be taxed until improved.

In all the cases cited from the Connecticut Reports, the exemption of the property from taxation is based upon the act of 1702, which, in terms, declares that all such lands, &c., as *have been* or *shall be* given, &c., shall be exempt from taxes. Here the exemption is a condition of the gift. And with great propriety did that court hold the exemption to be beyond the control of the legislature, so far as lands granted, while that statute was in force, were concerned.

It only remains to consider the effect of the act of 1814, which, in effect, provides that all lands granted to public, pious and charitable uses, shall be forever exempt from taxation. It is at once obvious that lands granted by the state for these uses, while that statute was in force, would take that exemption, as one of the conditions of the grant, as was held in the Connecticut cases. But that statute could have no effect upon former grants, except while it continued in force. After land of the state is once granted, and its uses declared, the legislature (unless some reservation is made,) have no more control over it than they have over any other property in the state. It was a simple act of ordinary legislation, so far as this land was concerned, which had been granted and leased many years before. The legislature of 1814 could no more bind any future legislature, in regard to exempting public land from taxation, than they could upon any other subject. A statute providing that all land should forever be exempt from taxation, would be of the same force, and as irrepealable as this statute. The argument might be carried further with perfect truth, but it is not deemed necessary.

Judgment affirmed.