<i>v.</i><br>Barnet, Rye-<br>gate and<br>Newbury.

The opinion of the court was delivered by

REDFIELD, J.—The court think the plaintiff in this case, at all events, entitled to recover *nominal* damages. If the officer was required, as in the present case, to do an official act, which did not subject him to an action from any one, it was his duty to do the act in a legal manner. And whether it would avail the creditor, was no matter of concern to him. If the creditor saw fit in this manner to try the title of his debtor to real estate, it was his right to have a perfect levy, in the first instance, and, as we decided when this case was in this court before, (13 Vt. R. 582,) that the levy having become perfected by time, did not constitute a full defence to the action, so now the fact that the debtor had no title to the land, at the time of the levy, will have no more effect. It shows that no substantial damage has been sustained, but does not take away the right of action.

Judgment reversed and new trial.

---

JOHN ARMINGTON and others *v.* The Towns of BARNET, RYEGATE and NEWBURY.

The act of the legislature, passed in 1839, authorizing the supreme and county courts to take the franchise of a turnpike corporation for a public highway, is constitutional.

PETITION of John Armington and three hundred and twenty one others, filed in this court, praying the court to appoint commissioners for the purpose of laying out and establishing a public highway through those parts of the towns of Barnet, Ryegate and Newbury over which the road of the Passumpsic Turnpike Company runs.

The legislature, at their session in 1839, passed an act relating to highways, the first section of which is as follows:

" Whenever there shall be occasion for any new highway ' in any town or towns in this state, the supreme court and

CALEDONIA,
March,
1843.

Armington
et al.
v.
Barnet, Rye-
gate and
Newbury.

'county courts shall have the same power to take any real es-
'tate, easement or franchise of any turnpike or other corpora-
'tion, when, in their judgment, the public good requires a
'public highway, which such courts now have by the laws
'of this state, to lay out highways over individual or private
'property ; and the same power is granted, and the same
'rules shall be observed in making compensation to all such
'corporations and persons, whose estate, easement, franchise
'or rights shall be taken, as are now granted and provided
'in other cases :—*provided*, that no such real estate, ease-
'ment or franchise shall be taken in the manner and for the
'purposes aforesaid, unless the whole of such real estate,
'easement or franchise belonging to said [such] corporation
'shall be taken, and compensation be made therefor.

Commissioners were appointed under said act, who report-
ed, among other things, in substance, that, having notified the
parties in interest, and heard the testimony by them intro-
duced, and having examined said turnpike road, &c., they
found that the public good required that there should be a
road through the towns of Barnet and Ryegate to Wells
River, in Newbury, on the track of the Passumpsic turnpike,
free from tolls ; they therefore surveyed and laid out a public
highway, upon the track of said turnpike, and awarded the
sum of four thousand dollars to said turnpike company, as
the full value of their franchise ;—seventy six dollars to be
paid by the town of Newbury ; $2.094, by the town of
Ryegate, and $1.830, by the town of Barnet. Other facts
were stated in the report, but, as the case was decided wholly
upon the constitutionality of the act of the legislature, above
recited, it becomes unnecessary to make a fuller statement in
reporting the case.

The towns of Barnet and Ryegate, and said turnpike com-
pany filed exceptions to the report, insisting that said act of
1839 was unconstitutional, &c.

*C. Davis*, for defendant.

A turnpike may be laid over a free road for short distan-
ces, when necessary, *Com.* v. *Wor. T. P. Co.* 3 Pick. R.
327 ; but a gate cannot be erected on such road. *Wales, Tr.
of B. H. T. P. Co.* v. *Stetson*, 2 Mass. R. 143.

Nor can a free road be laid over a turnpike. *West Boston*

CALEDONIA,
March,
1843.

Armington
el al.
v.
Barnet, Rye-
gate, and
Newbury.

*Bridge* v. *County Com. of Midddlesex,* 10 Pick. R. 270. It is not necessary that towns should have a right to a suit for their expenditures; though, in one case, and probably both, they could maintain suits.

Mere voluntary expenses could not be recovered. 2 Pick. 41. This report must be accepted or rejected entirely. 1. If a franchise is taken for public use, it must be wholly taken. Act of 1839. 2. The act of 1839, we insist, is unconstitutional, being repugnant to the constitution of the United States, which prohibits any state from passing any act impairing the obligation of contracts. The grant of the charter of the company was a contract within the meaning of this clause. *Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Caledonia Co. Grammar School* v. *Burt,* 11 Vt. R. 632; *Starr* v. *Robinson,* 1 D. Ch. R. 257; *Pingree* v. *Washburn,* 1 Aik. 264; *State* v. *Bosworth,* 13 Vt. R. 402; *Fletcher* v. *Peck,* 6 Cranch, 87; *Terret et al.* v. *Taylor et al.* 9 Cranch, 43; *State of New Jersey* v. *Wilson,* 7 Cranch, 164.

That the contract will be violated if this proceeding is consummated admits of no doubt. The charter is to be wholly abrogated, if any thing is done.

To whom is the compensation to be made after the corporation is dissolved? How can it enforce a decree or take an execution, or sue the officer for neglect? An act of the legislature, taking away the franchise directly, it is admitted, would be unconstitutional. Can that be done indirectly through the aid of commissioners and the supreme court, which could not be done directly?

The right of eminent domain, or of taking private property for public use, on making adequate compensation, we freely recognize, as generally practised and understood, i. e. to take land, timber, and other material things. It has seldom been applied to incorporeal rights, or corporate premises. If it can ever be done, it is only in extreme and urgent cases. 14 Wend. 51; 1 Bald. C. C. R. 205; 18 Wend. 14, 15; 2 Pet. R. 657, Story's Opin.; 5 Paige, 146, 160; 7 Cow. 585; 17 John. 195; 23 Pick. 360.

At all events, if the act may be regarded as constitutional, with the court rests the power of judging in what cases it should be applied. And the court will not, as a matter of

CALEDONIA, *March,* 1843.

Armington *et al.* *v.* Barnet, Ryegate, and Newbury.

sound discretion, act under it, except in a case of strong necessity, so as to cause the destruction of the contract between a corporation and the state.

3. It has been suggested that the towns cannot avail themselves of this question. As a constitutional question any party, whose interests are affected, can raise the question. If defendant towns are called on to pay a larger sum of money for damages, when no damages accrue by reason of the charter remaining untouched, it would be strange if they could not object. As a matter of discretion merely it is competent for the towns to present any reason why the court should not abrogate the charter.

*E. Paddock,* for petitioners.

1. The powers of our legislature are as broad and boundless as are those of the British parliament, and we find the parliament may dissolve a corporation. 1 Black. Com. 485. And when a turnpike corporation is dissolved, the land over which the easement or corporate property extended, reverts to its former owner. 1 Bl. Com. 484. And if, by operation of an act of parliament, a corporation may be dissolved, then the same authority may direct the doing of that which shall render the charter inoperative, and that is the case now under consideration.

2. If it shall be considered that the legislature have not power directly or indirectly to vacate a charter, or recall a grant, yet, in this case, they have a legal right to compel the corporation to yield their rights, and accept an equivalent; 1 Bl. Com. 139; and this the legislature has done. This is no new thing in the state, for all our road laws are based upon the same principle. The act of 1839 proposes nothing new in the principle of building roads, but simply declares that private property, held by a tenure less than *fee simple,* may be taken and appropriated to public use, by paying an equivalent therefor; as property held in fee simple always has, and may now be taken.

The opinion of the court was delivered by

REDFIELD, J. — The only question arising in the present case, is, as to the constitutionality of the statute of 1839, authorizing the supreme and county courts, in the state, to

take the franchise, or easement, of any turnpike corporation, when, in their judgment, the public good requires a public highway over such easement, or the land in which such easement exists.

It is now too late in the day, and the law upon this subject is too far settled, to go into the discussion of elementary principles.   No one now questions the right of the highest judicial tribunal in a state to declare an act of the legislature void, when its provisions conflict, either with the state or the United States constitution.   On the other hand, it is, at this day, I apprehend, equally well settled, that no court can pronounce any act of the legislature void, for any supposed *inequality* or *injustice* in its *intention*, or its *operation;* provided it be upon a *subject-matter* fairly within the *scope* of *legislative authority*, and the provisions of the law be *general*.   Hence it is true, no doubt, that the legislature, by *general* enactments, might tax any given species of property, either private or corporate, to the full value of the property itself; for the power of taxation, when once conceded to the legislature, over any given subject, "implies the power of destruction" even, as was declared by the court in the case af *M'Culloch* v. *The State of Maryland*, 4 Wheaton, 316. And the legislature having, in the present case, referred the question of discretion, as to the necessity of taking the franchise, to the courts, can make no difference, so far as regards the present question.

The only question which we now propose to consider is the power of the legislature to take the road of a turnpike company, for a public highway, upon making adequate compensation.   This is the first time this court have been called upon to discuss this naked question.   But similar questions have been before us, arising under the same act; and the question has, of late, been so fully discussed, both in the national and state tribunals, that little more remains for determination, unless we are prepared to disregard the aid and authority of those numerous determinations which have so commended themselves to the learning of the profession and the good sense of the public generally, that one, who should now attempt to run counter to their general current, might incur the imputation of rash, self-confidence, if not the suspicion of foolhardiness, even.   This is not said as a justifica-

CALEDONIA,
*March,*
1843.

Armington
*et al.*
*v.*
Barnet, Ryegate and Newbury.

CALEDONIA,
March,
1843.

Armington
et al.
v.
Barnet, Rye-
gate and
Newbury.

tion for an opinion, which is esteemed questionable in its principles, but as an excuse for foregoing the labor of an extended discussion of the foundation of those principles, which is much better done in the cases which will be referred to. In all cases of constitutional law, the determinations of the state tribunals, upon similar questions, are entitled to very great weight; but, in a case like the present, where the act is alleged to contravene the provisions of the United States constitution, the decisions of the national tribunals, upon the point, are of paramount authority. We come, then, to a brief consideration of the question involved, upon the grounds thus indicated.

It is not claimed, I apprehend, as I have before said, that there is any power in this court to declare the statute in question void, except so far as it shall be found *fairly* and *necessarily* to conflict with some *express* or *necessarily implied* provision, either of the state or United States constitution. It is not claimed that this statute does conflict with any such provision of the state constitution, or with any portion of the United States constitution, unless it be that which prohibits the states from passing any "law impairing the obligation of contracts." Art. I., sec. 10. The general power of the legislature to take private property for public uses, upon making adequate compensation, is universally conceded, and seems to be expressly granted by our "declaration of rights," part first, state constitution, article two: "That private property ought to be subservient to public 'uses, when necessity requires it; nevertheless, whenever 'any person's property is taken for the use of the public, the 'owner ought to receive an equivalent in money."

It has never been questioned, that the legislature had the full power to take private property for the purpose of public highways. They may grant this power to a private corporation, as was done to the defendants. It is now settled, in most of the states, that this privilege may be granted to a rail-road corporation, which is considered but an improved mode of constructing highways. *Bonaparte* v. *C. & A. Rail Road Co.* 1 Baldwin's C. C. R. 205; *Rail Road Co.* v. *Davis*, 2 Dev. & Bott's North C. R. 451; *Bloodgood* v. *Mohawk & H. R. R. Co.* 14 Wend. R. 51, and same case again 18 Wend. 1; *Louisville C. H. R. R. Co.* v. *Chappel,*

CALEDONIA,
*March,*
1843.

Armington
*et al.*
*v.*
Barnet, Rye-
gate and
Newbury.

1 Rice's S. C. R. 383. But it is argued that such a grant, when once made to a private corporation, is a contract, irrevocable, and inviolable. No doubt it is such, just as much, and no more, than was the original grant of the land. All land is, in fee, the property of the sovereignty. Originally it forms a portion of the public domain, until parcelled out to private persons, either natural or artificial. All such grants are contracts, irrevocable, and inviolable. Hence if there be a condition, beneficial to such grantees, annexed to the grant, as, for instance, that such land shall be forever exempt from taxes, this exemption becomes perpetual. *State of New Jersey* v. *Wilson,* 2 Pet. Cond. R. 457 ; *Herrick* v. *Randolph,* 13 Vt. R. 525. The same is true of the grant of any corporate franchise. But there is no sound reason why the one case of grants should be esteemed any more sacred than the other. Both classes of grants are always understood to be made subject to those reserved rights in the state which are indispensable to state sovereignty. For instance, the grant of the fee in land to private persons does not authorize them to exercise any of the acts of sovereignty, as such, even within the bounds of their own territory, or of resisting the proper sovereign in the exercise of those rights. Those reserved rights of sovereignty, which, by law writers, are denominated the right of eminent domain, always exist as a condition, or implied reservation, in all these grants, whether of lands in fee, or of corporate franchises.

While, on the one hand, it is admitted, that 'no grant of the legislature, of either of the above descriptions, can be revoked or repealed in express terms, it must be conceded, that this right of eminent domain will always enable the legislature to take the benefit of the grant from the grantees, *for public use.* But this is one of those rights of sovereignty, which, to be of any avail, must be general and unlimited, and when it is remembered that it cannot be done without the " owner receiving an equivalent in money," and that the legislature are always exercising it by general laws, and upon their own constituents, there is but little danger of abuse. Hence, it was decided in the case of *Charles River Bridge* v. *Warren's Bridge,* 11 Peter's R. 539, that the legislature might grant a free bridge parallel with, and as near, as they judged the public good required, to toll bridges formerly

CALEDONIA,
March,
1843.

Armington
et al.
v.
Barnet, Rye-
gate and
Newbury.

granted by them, and this upon their general powers, without an assertion of the right of eminent domain in the land, out of which the franchise was granted, and of course, without compensation. After this decision, which, in regard to the United States constitution, must be considered a binding authority, it surely cannot be doubted, that the legislature have the right to take the franchise, upon making a full equivalent to the corporation. This latter course seems to me to be the true one. It cannot escape the observation of any one that the lapse of almost half a century, since the grant of this franchise, must have made a very considerable difference in the public wants, and the public claims to an open highway. If this franchise is not absolutely perpetual and uncontrollable, the time has doubtless come for the legislature to assert its right to interfere, and establish such a highway as the public exigencies *now* require. And in doing it, in this mode, there is no appearance of quibbling, or evasion, or of injustice and severity, which, whatever may be thought by the learned of the soundness of the decision last quoted, 11 Peters, 539, will be likely to be objected to it by plain, simple, unsophisticated, and unprejudiced minds. It is no doubt a sound *legal* decision, and the only one the *court* could have pronounced; but, unfortunately, it is not easy to assign reasons which very strongly commended themselves to our *sense of justice.* We are apt, in that case, to confound the decision of the court with the act of the legislature. While all now admit that the decision is sound and the *act* constitutional, it is, nevertheless, a precedent in *legislation,* that will not be likely to be often followed, and never, except in the most extreme cases. The present case is free from all show either of injustice or severity.

The report is accepted, and the road established and ordered to be opened, and the damages and costs paid in one year.