.IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1869, IN THE FIFTY-FOURTH
YEAR OF THE STATE.

---

### THE STATE, on the Relation of LAKEY, *v.* GARTON.

PRINCIPAL AND SURETY.— *Official Bond.—Estoppel.*—Suit on a sheriff's official
bond. Answer by a surety thereon, that he signed the bond upon the ex-
press condition and stipulation, stated to the principal, and by him agreed up-
on, that said principal would procure twelve other names of as responsible
men as there were in the county to execute said bond as co-sureties with
defendant, which the principal had failed to do; and that said bond (exe-
cuted September 23d, 1863) had never been acknowledged.
*Held,* that the answer was bad on demurrer.

CONSTITUTIONAL LIMITATION.—*Taxation.—National and State Governments.*—
The power of taxation exists in the state governments concurrent and co-
extensive with that of the general government (except as to duties on im-
ports and exports), and has for each this limit: neither may tax the legiti-
mate machinery or agencies employed by the other in the exercise of its
governmental powers and functions.

SAME.— *Official Bonds.*—Congress has not power under the Constitution to
impose a tax upon official bonds given to a state by its officers.

SAME.—*Sheriff's Bond.—Revenue Stamp.*—The validity of a sheriff's official
bond executed September 23d, 1863, was not affected by the failure to affix
a United States revenue stamp thereto.

APPEAL from the Wells Circuit Court.

RAY, J.—This action was upon the official bond of Na-
than DeHaven, sheriff of Wells county, for a violation of

official duty. No service of process was had upon the sheriff, and the suit was dismissed as to him. The sureties answered separately in three paragraphs. The first was a denial of the complaint. The second, that each surety signed upon the express condition and stipulation stated to the said De-Haven and agreed upon by him, that he would procure twelve other names of as responsible men as there were in that county, to execute said bond as co-sureties with the defendants, which he had failed to do; and that said bond, executed September 23d, 1863, had never been acknowledged.

A demurrer was filed at the August term, 1865, to this paragraph of the answer, which was overrued by the court. As the case of *Deardorff* v. *Foresman*, 24 Ind. 481, decided at the November term, 1865, of this court, and the cases of *Blackwell* v. *The State*, 26 Ind. 204; *Webb* v. *Baird*, 27 Ind. 368; and *The State, ex rel. McCarty*, v. *Pepper*, 31 Ind. 76, have required this court to consider fully the question involved, we will not again enter upon its discussion. The demurrer should have been sustained. No acknowledgment of the execution of the bond was required by any law of this State then in force.

The third paragraph of the answer alleged, that a revenue stamp had never been affixed to the bond.

Under the act of June 30th, 1864, "to provide Internal Revenue to support the Government," &c., chapter 173, session 1st of the thirty-eighth Congress, it was provided by section 158, "that any person or persons who shall make, sign, or issue, any instrument," &c., "without the same being duly stamped," &c., "with intent to evade the provisions of this act, shall, for every such offense, forfeit," &c., "and such instrument * * * shall be deemed invalid and of no effect." Under this section it was held, that unless there was an averment that the omission was from an intent to evade the act, the plea was not good.

By the act of July 13th, 1866, this section was amended

so as to read, "and such instrument, not being stamped according to law, shall be deemed invalid and of no effect."

The plain intent of this amendment was to avoid the effect of the rulings which held the instrument valid unless the intent existed to violate the act; and under this amendment, the person who omits the stamp may not be liable, and yet the paper itself will be void, because "not stamped according to law." This change in the language of the act seems to have been overlooked in the recent case of *Vorebeck* v. *Roe*, 50 Barb. 302.

The 95th section of the act of July 1st, 1862, which was in force when this bond was executed, with a change of schedule by the act of March 3d, 1863, declared the instrument unstamped to be "invalid and of no effect." Under such a provision, it cannot be held that the question may not be presented by plea, or that the plea must aver an intent to evade the act of Congress. If the instrument be absolutely "invalid and of no effect," no suit can be maintained upon it; and certainly an answer which avers facts which prove this invalidity would constitute a good defense to an action upon it.

Under these considerations, counsel have pressed a question of such gravity that we would willingly avoid its discussion, were we not required by official duty to meet it and dispose of it upon as full an examination as our time, limited by the pressure of an overburdened docket, will permit—a question that involves the lining of the limit, under the Constitution of the United States, to the power of Congress to influence by its legislation the harmonious working of the machinery of a state government.

If a state is to exist as a sovereign, it must of necessity have the power to select its agents to execute its laws, and must be empowered to exact from them such pledge for the faithful discharge of their duties as may seem best calculated to secure their performance. In exacting such security, it must be as independent of all control as in enforcing the condition of the bond when forfeited.

The Supreme Court of the United States has declared the limit to state taxation, so far as the interests of the general government are involved. A state may not tax a bank of the United States, because the bank is to be considered an agency of the national government in the accomplishment of its constitutional purposes. "That the power to tax," says Chief Justice MARSHALL, "involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance, in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied." *M'Culloch* v. *Maryland,* 4 Wheat. 316.

The power to tax involves the power to destroy, because, in the language of this eminent jurist, it is "unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what degree may amount to the abuse, of the power." The rule has received almost universal recognition. *Kirby* v. *Shaw,* 19 Penn. St. 258; *Sharpless* v. *Mayor,* 21 *Id.* 147; *Weister* v. *Hade,* 52 *Id.* 474; *Wingate* v. *Sluder,* 6 Jones, N. C. 552; *Herrick* v. *Randolph,* 13 Vt. 525; *Armington* v. *Barnet,* 15 Vt. 745; *Thomas* v. *Leland,* 24 Wend. 65; *People* v. *Mayor,* 4 N. Y. 419; *Portland Bank* v. *Apthorp,* 12 Mass. 252.

Again, the states may not tax the obligations or evidences of debt issued by the general government upon the loans made to it, because such tax would trammel the operations of the government in negotiating loans. *Weston* v. *Charleston,* 2 Pet. 449; *Bank of Commerce* v. *New York City,* 2 Black, 620; *Bank Tax Case,* 2 Wal. 200; *Van Allen* v. *Assessors,* 3 Wal. 573; *People* v. *Commissioners,* 4 Wal. 244; *Bradley* v. *People,* 4 Wal. 459.

Nor may a state tax an officer of the general government for his office or its emoluments, since such a tax, having the effect to reduce the compensation for the services provided by the act of Congress, would, to that extent, require from

the national treasury an increased expenditure to secure the execution of its laws. *Dobbins* v. *Commissioners of Erie Co.,* 16 Pet. 435.

And has this principle, vital indeed to protect the national life, no other application? The benefit of its application has been boldly claimed by the men who have honored the highest judicial positions the nation could bestow on intellect, learning, and virtue. It has protected the one from the hostile action of the many. May not its protection also be invoked to secure the many from an unauthorized exercise of power by the one? Is not the existence of the state governments as fully recognized in the Constitution of the United States as that of the national government? If the states may not exercise a power which might menace the general government, should not that hand also be held back from the throat of the former, though the pressure be at present ever so slight?

True, the national government is our government, and we will not anticipate an attempt by it at our destruction as a state, but, as the Chief Justice remarked, in discussing this very question in *M'Culloch* v. *Maryland*, this "is not a case of confidence."

"If," continues the Chief Justice, "we apply the principle for which the State of Maryland contends, to the constitution generally, we shall find it capable of changing totally the character of that instrument. We shall find it capable of arresting all the measures of the government, and of prostrating it at the foot of the states. * * * If the states may tax one instrument, employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent rights; they may tax the papers of the custom house; they may tax judicial process; they may tax all the means employed by the goverment, to an excess which would defeat all the ends of government."

And may we not respond, that if the national government may tax—nay more—may declare "invalid and of

no effect," the official bond executed to the state from its own citizen selected by it to execute its own laws, may the national government not also tax the issue of a warrant from the State Auditor upon the State Treasurer, the signing of a pardon by the Governor, his approval of a bill, the passage of the very bill itself by the legislature, the decisions of our judges, the process of our courts? Nay, it did tax that process. This, then, " is not a case of confidence," but of construction of a Constitution which is over and above both national and state governments.

The first clause of the eighth section of the first article of the Constitution of the United States declares, that "Congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States."

The word tax, as here used, includes all contributions imposed by the government upon individuals for the service of the state. Story Const. § 950.

This power to tax is not exclusive in the national government. A concurrent and coextensive power remains in the states, as a part of their "original and unsurrendered sovereignty," except as to duties on imports and exports. "The authority is coequal." Federalist.

"It will at once be seen," says Judge STORY, "that the state governments have complete means of self-protection; as, with the sole exception of duties on imports and exports, (which the constitution has taken from the states, unless it is exercised by the consent of Congress) the power of taxation remains in the states, *concurrent* and *coextensive* with that of Congress. The slightest attention to the subject will demonstrate this beyond all controversy. The language of the constitution does not, in terms, make it an exclusive power in Congress; the existence of a concurrent power is not incompatible with the exercise of it by Congress; and the states are not expressly prohibited from using it by the constitution. Under such circumstances the argument is irresistible, that a concurrent power remains in

the states, as a part of their original and unsurrendered sovereignty." 1 Story Const. §§ 940, 941, 942; Federalist, No. 32; *Gibbons* v. *Ogden*, 9 Wheat. 191 to 202; 1 Kent Com. lec. 18; 4 Wheat. 193; 5 Wheat. 22; 12 Wheat. 448.

"Any separation of the subjects of revenue, which could have been fallen upon, would have amounted to a sacrifice of the interests of the union to the power of the individual states; or to a surrender of important functions by the latter, which would have removed them to a mean provincial servitude and dependence." Story Const. § 943.

The jurisdiction of the state on the subject of taxation for state purposes is supreme, over which the government of the United States can have no power or control. *The People* v. *Bradley*, 39 Ill. 130.

This power of taxation, existing alike in the general government and in the states, coextensive and concurrent, by virtue of the sovereignty of each, has, then, for each this limit: neither may tax, because neither may take away, the legitimate machinery or agencies employed by the other in the exercise of its governmental powers and functions.

The principle which operates as a limitation upon the power of the state to tax the agencies and minute machinery employed by the general government to carry out its constitutional functions, must in turn equally restrain the power of Congress to tax, to trammel, or destroy, the means used by the state to perpetuate an existence as sacred under the Constitution as the national life, because a constituent of that life.

Nor is this conclusion the result of admitted premises alone. A writer on constitutional limitations whose official position, as well as the evident candor and ability manifest in his work, entitles his comments to consideration, reaches a conclusion thus expressed: "If the states cannot tax the means by which the national government performs its functions, neither, on the other hand, and for the same reasons, can the latter tax the agencies of the state governments." Cooley Const. Lim. 483.

In the case of *Fifield* v. *Close*, 15 Mich. 505, this language occurs: "The same supreme power which established the departments of the general government, determined that the local governments should also exist for their own purposes, and made it impossible to protect the people in their common interests without them. Each of these several agencies is confined to its own sphere, and all are strictly subordinate to the constitution, which limits them, and independent of other agencies, except as thereby made dependent. There is nothing in the constitution which can be made to admit of any interference by Congress with the secure existence of any state authority within its lawful bounds. And any such interference by the indirect means of taxation, is quite as much beyond the power of the national legislature, as if the interfence were direct and extreme." See, also, *Jones* v. *Estate of Keep*, 19 Wis. 369; *Union Bank* v. *Hill*, 3 Cold. Tenn. 325; *Warren* v. *Paul*, 22 Ind. 276.

In *Dobbins* v. *Commissioners of Erie Co.*, *supra*, the argument against the right of a state to tax the salary of an officer of the United States is, that under the Constitution, the general government has the right to employ its officers and agents to execute its laws and fix their compensation for the discharge of those services, and that this, being a sovereign power, can not be controlled by the state. So the state has, under the same Constitution, the right to perpetuate itself; to employ its officers to execute its laws; and fix their compensation. In this it acts, under the Constitution, as a sovereign and subject to no other control.

Again, it is said, the taxation of the office or its salary is in effect a tax upon the United States government. If so, a tax upon the official bond executed by the state officer is to that extent a tax upon the state, and Congress can only impose such a tax by apportionment "among the several states which may be included within this Union, according to their respective numbers." Const. art. 1. sec. 2.

True, the amount exacted is small; so it was in the case

of the government officer whose office was appraised for taxation. But the power to exact one dollar involves the power to levy one thousand. The power to tax involves the power to destroy.

The purposes for which taxation may be levied by the national government are expressed, and are a limitation upon the power.

Mr. Jefferson says, "To lay taxes to provide for the general welfare of the United States, is, to lay taxes *for the purpose* of providing for the general welfare. For the laying of taxes is the *power*, and the general welfare the *purpose*, for which the power is to be exercised. Congress are not to lay taxes *ad libitum*, for any purpose they please; but only to pay the debts, or provide for the welfare of the nation." Jefferson's opinion on the Bank of the United States, 15th Feb. 1781, 4 Jefferson Correspondence, 524–5. Such, also, were the views expressed by Mr. Hamilton, in his argument on the constitutionality of a National Bank, in his treasury report on manufactures; by Mr. Ellsworth, 3 Am. Museum, 338; by President Monroe, in his message May 4th, 1822; by Mr. Adams, in his letter to Speaker Stevenson, July 11th, 1832. In the case of *Gibbons* v. *Ogden*, 9 Wheat. 199, Chief Justice MARSHALL said, "Congress is authorized to lay and collect taxes, &c., to pay the debts, and provide for the common defense and general welfare of the United States. This does not interfere with the power of the states to tax for the support of their own governments; nor is the exercise of that power by the states an exercise of any portion of the power that is granted to the United States. In imposing taxes for state purposes, they are not doing what Congress is empowered to do. Congress is not empowered to tax for those purposes, which are within the exclusive province of the states. When, then, each government exercises the power of taxation, neither is exercising the power of the other." Mr. Justice STORY concludes, that, "under such circumstances, it is not, perhaps, too much to contend that it is the truest, the safest, and most author-

itative construction of the constitution." Sec. 927. See, also, 1 Kent Com. 251; Serg. Const. Law, ch. 28, pp. 311, 315; Rawle Const. ch. 9, p. 104.

These limitations on the power of Congress are, that the taxes must be levied "to pay the debts and provide for the common defense and general welfare of the United States." Const. art. 1, sec. 8.

But the United States are required by the Constitution to guarantee to every state in this Union a republican form of government. Const. art. 4, sec. 4.

This requirement would be a mockery, if Congress, under the right to tax for the general welfare, could prevent the exercise of the functions of state government. It would be to guarantee but a mere form of republican government, without the power in the government to execute its functions. But it is plain, from the promptitude evinced by Congress in the repeal of the tax upon the process of the state courts, and from the exceptions in the internal revenue act, restricting the stamp duty so as not to include official documents issued by the state itself, that there was no intent to pass the constitutional limit, and that this tax upon official bonds given to the state by its officers is an error in drafting the law, which will doubtless receive as prompt correction.

Our duty, however, seems plain. In our opinion, the tax upon official bonds is not within the power of Congress to impose, under the provisions of the Constitution.

The demurrer should have been sustained to the paragraph. Judgment reversed, and cause remanded.

*J. Morris*, *L. M. Ninde*, and *R. S. Taylor*, for appellant.