least, the sister Jessie is mentioned in the will as one "with means." She certainly would not be eligible to the general class as one having "small means." There is nothing to show that those mentioned in the preferred class are all "Protestants." Some may be Catholics, or belong to other denominations. There are three men distinctly named in the preferred class, and they certainly cannot qualify in the general class as "gentlewomen." So that, even if the contention of the learned attorney for the proponent is correct, the so-called preferred class certainly would not be eligible in the so-called general class.

A decree should be made declaring void the trust attempted to be created by the testatrix, and adjudging that she died intestate as to the funds which she endeavored to bequeath to the Westchester Trust Company as trustee.

Decreed accordingly.

(89 Misc. Rep. 282)

## NELDERT v. CHICAGO, R. I. & P. R. CO.

(City Court of New York. February, 1915.)

1. CONSTITUTIONAL LAW ⬥48—CONSTRUCTION OF STATUTES—VALIDITY.

A statute susceptible of two interpretations, one within and the other beyond the constitutional authority enacting it, should be so construed as to keep it within such authority.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ⬥48.]

2. TAXATION ⬥204—PROPERTY SUBJECT—EXEMPTION.

Since a tax cannot be imposed without clear and express words for that purpose, any doubt as to whether an instrument is subject to taxation should be resolved in favor of exemption.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 321–323, 325, 332, 333; Dec. Dig. ⬥204.]

3. INTERNAL REVENUE ⬥19—REVENUE ACT—APPLICATION TO STATE OFFICERS.

Revenue Act U. S. Oct. 22, 1914, c. 331, § 5, 38 Stat. 753, requiring that certificates of any description be stamped, applies to certificates issued by state officers.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39–44; Dec. Dig. ⬥19.]

4. STATUTES ⬥188—UNAMBIGUOUS WORDS—CONSTRUCTION.

The words of a statute, when unambiguous, should be taken for what they say, and in the sense in which they will ordinarily be understood.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 266, 267, 276; Dec. Dig. ⬥188.]

5. INTERNAL REVENUE ⬥2—STATE SOVEREIGNTY—REVENUE ACT—VALIDITY.

Revenue Act U. S. Oct. 22, 1914, c. 331, § 5, 38 Stat. 753, requiring that the certificate of a clerk of the state court be stamped, is unconstitutional; the federal government having no power to tax the exercise of a function of a state.

[Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. § 2; Dec. Dig. ⬥2.]

6. UNITED STATES ⬥5—POWERS—SOVEREIGNTY.

While the sovereignty of the states is inherent and original, that of the federal government is acquired, and limited to those powers conferred

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

upon it by the people through the adoption of the federal Constitution and amendments thereto.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 4; Dec. Dig. ☞5.]

Action by August Neldert against the Chicago, Rock Island & Pacific Railroad Company. On motion to retax costs. Motion granted.

Roger Foster, of New York City, for the motion.
Thomas F. Smith, of New York City, pro se.

ALLEN, J. The plaintiff procured his bill of costs to be taxed by the clerk ex parte. He then noticed the same, containing additional items, for retaxation. The clerk orally adjusted the items upon the application for retaxation, but he refused to certify the same as retaxed unless the plaintiff should affix upon the same a United States revenue stamp of the denomination of 10 cents. Thereupon the plaintiff applied for "an order directing the clerk of this court to mark said bill of costs retaxed at the amount that he determines to be correct without requiring the plaintiff to affix a revenue stamp upon the same."

Section 5 of the United States Revenue Act of October 22, 1914, (38 Stat. 753, c. 331), provides as follows:

"That on and after the first day of December, nineteen hundred and fourteen, there shall be levied, collected and paid, for and in respect of the several bonds, debentures or certificates of stock and of indebtedness and other documents, matters and things mentioned and described in schedule A of this act, or for or in respect of the vellum, parchment or paper upon which such instruments, matters or things, or any of them, shall be written or printed by any person or persons, or party who shall make, sign or issue, or for whose use or benefit the same shall be made, signed or issued, the several taxes or sums of money set down in figures against the same respectively, or otherwise specified or set forth in the said schedule."

Schedule A, inter alia, is as follows:

"Certificates of any description required by law not otherwise specified in this act, 10 cents."

Section 6 of the act provides:

"That if any person or persons shall make, sign or issue, or cause to be made, signed or issued, any instrument, document or paper of any kind or description whatsoever without having thereon an adhesive stamp to denote said tax, such person or persons shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not more than $100, at the discretion of the court."

Section 12 of the act provides:

"That hereafter no instrument, paper or document required by law to be stamped which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto as prescribed by law."

Section 13 of the act, which is substantially a repetition of section 12, which repetition illustrates the carelessness with which it was prepared, provides:

"That it shall not be lawful to record or register any instrument, paper or document required by law to be stamped unless a stamp or stamps of the proper amount shall have been affixed and canceled in the manner prescribed by law."

[1-3] This application presents two questions for determination: (1) Whether these provisions of the act apply to certificates required to be made by the clerk of a state court; and, (2) if so, whether they contravene the provisions of the Constitution of the United States. While a statute susceptible to two interpretations, one within and the other beyond the constitutional authority enacting it, should be so construed as to keep it within such authority (United States v. Coombs, 12 Pet. 72, 9 L. Ed. 1004; Grenada County Supervisors v. Brogden, 112 U. S. 261, 5 Sup. Ct. 125, 28 L. Ed. 704; Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721; St. Louis S. W. R. Co. v. Arkansas, 235 U. S. 350, 35 Sup. Ct. 99, 59 L. Ed. ——), and while any doubt as to the liability of an instrument to taxation should be resolved in favor of exemption (United States v. Isham, 17 Wall. 496, 21 L. Ed. 728; McNally v. Field [C. C.] 119 Fed. 445), since a tax cannot be imposed without clear and express words for that purpose (Girr v. Scudds, 11 Exch. 191), I do not find any justification in the language of the act for holding that it was not intended to apply to state officials, as well as to other persons. Its terms are general, and consequently no limitations should be imposed by judicial authority. United States v. Coombs, 12 Pet. 72, 9 L. Ed. 1004.

While, at first sight, the provisions of section 15 of the act may seem to exempt the instrumentalities of the state governments from its operation, a careful reading discloses the fact that the exemption provided in that section relates *only* to "bonds, debentures or certificates of indebtedness" issued in the exercise of purely governmental, as distinguished from proprietary, functions, or, to use the language of the act, functions strictly belonging to "*such* state, county, town or other municipal corporations" in the exercise of "their ordinary governmental, taxing, or municipal capacity."

[4] To indulge the construction that the provisions of the statute under consideration do not relate to state officials would, in my judgment, amount to judicial legislation under the guise of interpretation, which, under the threefold division of our governmental powers, constitutes an unwarranted encroachment upon the constitutional prerogatives of the legislative branch and is equally indefensible, whether it consist in reading into statutes a meaning of which they are not fairly susceptible or in excluding from them something which they do contain. The judiciary can best subserve its high and honorable purpose by adhering strictly to its proper function of expounding the law, rather than by transgressing upon prerogatives which the people have jealously reserved to their chosen representatives in the Legislature. I think that the words of a statute, when unambiguous, should be taken at what they say and in the sense in which they will ordinarily be understood by the public in which they are to take effect (United States v. Isham, 17 Wall. 469, 21 L. Ed. 728); and, taking the words of this statute thus, I am of the opinion that they include state officers, as well as other persons.

[5, 6] This conclusion makes relevant the inquiry whether Congress has, in enacting the provisions of the statute under consideration, exceeded its constitutional powers. We have in this country two distinct and independent sovereignties—the sovereignty of the several states and the sovereignty of the federal government—each extending over the same territory, and yet each supreme within its own sphere. Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; United States v. Cruikshank, 92 U. S. 588, 23 L. Ed. 588. The sovereignty of the states is inherent and original. That of the federal government is acquired; and it has no powers, except such as have been conferred upon it by the people through the adoption of the federal Constitution and the amendments which have been made thereto. Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648; Martin v. Hunter's Lessee, 1 Wheat. 304, 4 L. Ed. 97; Gibbons v. Ogden, 9 Wheat. 186, 6 L. Ed. 23; Briscoe v. Bank of Kentucky, 11 Pet. 257, 9 L. Ed. 709; Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; Gilman v. City of Philadelphia, 3 Wall. 713, 18 L. Ed. 96; Slaughter House Cases, 16 Wall. 36, 21 L. Ed. 394; United States v. Cruikshank, 92 U. S. 588, 23 L. Ed. 588.

Any encroachment by one of these sovereignties upon the prerogatives of the other is contrary to the scheme of this dual system; and it is of the highest importance to the genius in well-being of both that this balance be at all times consistently maintained. Neither of these respective sovereignties can be more effectively assailed than through the medium of the taxing power; for the power to tax is the power to destroy. It follows, therefore, that a state cannot tax the exercise of a function of the federal government, and that the federal government cannot tax the exercise of a function of a state. McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579; Collector v. Day, 11 Wall. 113, 20 L. Ed. 122. Were it otherwise, the states might destroy the power of the federal government by taxing its officers out of existence and, conversely, the party constituting a majority of Congress might destroy all state rights and nullify the action of all state officers by imposing upon them a tax so great as to be prohibitive.

It has accordingly been held that the federal government cannot prescribe rules of evidence for the state courts or interfere with the administrative procedure of the states (People ex rel. Barbour v. Gates, 43 N. Y. 40; Moore v. Moore, 47 N. Y. 467, 7 Am. Rep. 466; People ex rel. Consumers' Brewing Co. v. Fromme, 35 App. Div. 459, 54 N. Y. Supp. 833; Carpenter v. Snelling, 97 Mass. 452; Bryan v. First Nat. Bank, 205 Pa. 7, 54 Atl. 480; Tomlin v. Woods, 125 Iowa, 367, 101 N. W 135); and it is not competent for Congress to impose a tax upon the salary of a judicial officer of a state (Collector v. Day, 11 Wall. 113, 20 L. Ed. 122), or to require stamp upon the official bond of state officers (State v. Garton, 32 Ind. 1, 2 Am. Rep. 315), or to forbid the recording of an unstamped instrument under a state law (Moore v. Quirk, 105 Mass. 49, 7 Am. Rep. 499), or to compel the fixing of a stamp upon a state tax deed (Sayles v. Davis, 22 Wis. 225), or to impose a tax upon the income derived from the interest upon bonds issued by a municipal corporation (Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759), or to levy a tax

upon a bond to be given to procure a liquor tax certificate issued under a state law (United States v. Owens [D. C.] 100 Fed. 70; Ambrosini v. United States, 187 U. S.·1, 23 Sup. Ct. 1, 47 L. Ed. 49), or to tax an administration bond (McNally v. Field [C. C.] 119 Fed. 445), or to tax a notarial certificate (Prather v. Pritchard, 26 Ind. 65; Stirneman v. Smith, 100 Fed. 600, 40 C. C. A. 581), or to tax the bond of a notary public (Warwick v. Bettman [C. C.] 102 Fed. 127; Id., 108 Fed. 46, 47 C. C. A. 185).

It is immaterial to the principle involved that the tax required by the act is small; for the right to exact a moderate tax implies the right to exact a destructive one. Once the power is conceded, there is no limitation to the extent to which it may be exercised. Neither is it material that the tax is not required to be paid by the state official—in this instance by the clerk of this court, whose certificate is sought; for, though he is not required to supply and affix the stamp, its requirement is made a condition to, and consequently an embargo upon, the exercise of his official duties. He is entitled to discharge his duties free from the interference of the federal government, else he becomes absolutely subject to its control; and, upon this situation being brought about, the independence of the states is at an end. In Sackett v. McCaffrey, 131 Fed. 219, 65 C. C. A. 205, the Circuit Court of Appeals for the Ninth Circuit held that the War Revenue Act of 1898 provided that a "certificate of any description required by law, not otherwise specified in this act," was subject to the tax therein provided, related to and required the taxation of a notarial certificate of acknowledgment, largely upon the theory that the tax was not required to be paid by the state official; but that decision was rendered upon the question of the admissibility of the instrument to which the certificate related in evidence in a federal court, as to which Congress may properly legislate; and while, therefore, the result reached may be justified, the reason assigned therefor is not controlling when, as here, a matter of evidence in the federal courts is not involved.

These considerations lead me to the conclusion that the provisions of the statute requiring that a certificate of the clerk of a state court be stamped are unconstitutional and void. The motion is therefore granted.

Motion granted.