WHITE RIVER TURNPIKE COMPANY v. VERMONT CENTRAL RAIL
ROAD COMPANY.

[IN CHANCERY.]

It is now settled law, that there is no implied contract by the state in a charter of
a turnpike or other private corporation, that their property, or even their fran-
chise, shall be exempt from the common liability of the property of individuals
to be taken for the public use; that it may be taken, on proper compensation
being made; that a rail road is an improved highway, and that property, taken
for its use by authority of the legislature, is properly taken for the public use,
as much as if taken for any other highway; and that the legislature may dele-
gate its power to a rail road corporation, to take private property for public use
in the construction of their rail road, as well as to a turnpike corporation to
take the like property for the public use in the construction of a turnpike road.

It is also settled, that where there has been a legislative grant to a private cor-
poration to erect a bridge, turnpike, or other public convenience, which is not
in its terms exclusive, there is no constitutional obligation on the legislature,
not to grant to a second corporation the right to erect another bridge, or turn-
pike, for a similar purpose, to be constructed so near the former, as greatly to
impair,.or even to destroy, the value of the former,—and this without making
compensation to the first corporation for the consequential injury.

But so far as the real estate of such private corporation, or their interest in real
estate, is concerned, they are entitled to the same constitutional protection that
an individual would be. The property of either may be taken for public use
by authority of the legislature, if compensation be made therefor, but not oth-
erwise.

Although the charter of the Vermont Central Rail Road Company does not in
terms impower the corporation to locate their road along the valley of White
River, yet it must be taken, in the absence of evidence to show that there was
any other practicable route to the proper point on Connecticut River, desig-
nated in the charter, or that the route adopted was unsuitable, that the road
was properly located in the valley of White River.

Under the tenth section of the statute incorporating the Vermont Central Rail
Road Company, that corporation have power to enter upon and cross a turn-
pike road, as well as any other highway, making compensation to the turnpike
corporation for the injury they should sustain.

And the provisions of the charter of that corporation, prescribing a mode for
making compensation by appraisal, for injuries to land entered upon by them,
may be fairly construed to apply to the property and interest of a turnpike cor-
poration in the land embraced by their road, and in the road itself, as tangible
property.

APPEAL from the court of chancery. The allegations in the bill and answer and the facts proved are fully stated in the opinion delivered by the court. The court of chancery dismissed the bill; from which decree the orators appealed.

*Tracy & Converse* for orators.

1. The defendants had no legal right to lay their road over or in any way interfere with the plaintiffs' road. The state had granted the right for the turnpike, without reserve; and the legislature had no constitutional power to revoke, or resume, the rights and privileges granted to the plaintiffs. It was a contract, upon good and sufficient consideration. *Dartmouth College* v. *Woodward,* 4 Wheat. 518, [4 U. S. Cond. R. 526.] 10 Pick. 270. 11 Vt. 380. But if the government have power to resume the rights thus granted for public use, it cannot transfer those rights to another private corporation, established, not for merely public objects, but confessedly for private emolument. 4 Gill & J. 1. 10 Pick. 270.

2. The legislature have no power, under any circumstances, to interfere, or authorize any other person to interfere, with rights and privileges already granted, except upon payment of damages. No damages are directed to be paid in this case. See charter of defendants, Acts of 1843, sec. 7. The defendants, by their charter, are not authorized to interfere with the plaintiffs' road; and without such authority it will not be contended, that they had that right. So important a power cannot be implied; and certainly not in this case, as the charter specially provides for taking the Winooski turnpike. If the legislature have power to take turnpike roads and make them free roads, it is upon compensation, and to make them public property. *Armington* v. *Barnet et al.,* 15 Vt. 745. But in such cases they must give the power to take the franchise. 15 Vt. 745. 16 Vt. 446. There is nothing in the defendants' charter, which by implication can be construed to authorize this.

*L. B. Peck* for defendants.

By the provisions of the act of incorporation, under which the defendants justify, they had the right to locate their road in the valley of White River, and within the limits of the turnpike. Acts of 1843, p. 43, § 1; p. 45, § 4; p. 46, § 7; p. 48, § 9. This

power is expressly given by the tenth section of the act, which declares, that, "When it shall be necessary, in the construction of said road, to cross any stream of water, water course, road, or way, intersecting said rail road route, or line, said company may construct said rail road across or upon the same, provided said company shall restore the stream, water course, road, or way, thus intersected, as near as practicable to its former state and usefulness," &c. The terms "*road or way*" are very broad and comprehensive, and most clearly include turnpikes. This construction is strongly aided by the last clause of the proviso to section eight, which provides for the payment of consequential damages to the Winooski Turnpike Co.;—but the tenth section is left operative upon that company and the defendants.

If it be said, that the act is silent as to the right of the defendants to interfere with the property of another corporation, we answer, that this right is clearly to be inferred. The eighth section and its proviso would seem to remove all doubt. Though the act names the right of taking *land*, its provisions are to be construed liberally, and will therefore include leaseholds, easements, and other interests in land, as well as land itself. *Ellis* v. *Welch*, 6 Mass. 246. *Parks* v. *Boston*, 15 Pick. 203. *Boston Water Power Co.* v. *B. & W. R. R. Co.*, 23 Ib. 360, 395. *Rogers* v. *Bradshaw*, 20 Johns. 715. *Enfield Toll Bridge Co.* v. *Hartford & New Haven R. R. Co.*, 17 Conn. 454, 466. Rev. St. 53, § 8.

There is no constitutional objection to the act, in this view of the case. It does not deprive the orators of their franchise. The only effect is, to diminish its value. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420. 23 Pick. 360, 395. 17 Conn. 454. 20 Johns. 735. 6 Paige 554. 15 Vt. 745. 15 Wend. 114. 11 N. H. 20.

The opinion of the court was delivered by

HALL, J. This was an appeal from the court of chancery. The bill, which was filed in 1846, states, that the plaintiffs were incorporated by the legislature of this state in the year 1800 and authorized to lay out and make a turnpike road from the mouth of White River to the second branch of that river; that the corporation was duly organized, and built the road, and have ever since kept it in good repair, and have rightfully, in conformity to their charter, kept

gates upon it, and received tolls from travellers over it, and that no person, or corporation, has a right to injure the road, or interrupt the plaintiffs, or travellers, in the use of it;—that the defendants, a corporation chartered by the General Assembly of this state in October, 1843, have laid out and surveyed a line for a rail road, and are preparing to build the same, in the valley of said White River, along and over the plaintiffs' turnpike road, in many places crossing it in such manner as to stop all passing upon it, and in other places embracing the whole of the turnpike road, thereby interrupting, or entirely preventing, all travel or passing on the same; and that, if the road is permitted to be built, it will entirely destroy the plaintiffs' turnpike road, and prevent all passing upon it with any kind of teams or carriages whatever. The bill prays for a perpetual injunction against the defendants, from taking any real estate of the plaintiffs for their rail road, and from locating or building it across or within the limits of the plaintiffs' road, and from encroaching upon it in any manner.

From the answer of the defendants and the facts shown and agreed upon it appears, that the turnpike company laid out their road four rods wide, agreeably to their charter; that the rail road in many places is within the limits of the turnpike road, and that it crosses the turnpike road in four places,—in three of the places by means of bridges, the abutments of which stand within the limits of the turnpike road, but not within the travelled part of it, and once upon the track of the road; that some two or three acres of the turnpike road, in the whole, are covered by the rail road; that the turnpike road is in places, for considerable distances, made narrower by the encroachments of the rail road, but that from eighteen to thirty feet is in all places left for the travelled part of the turnpike; that in locating the rail road the defendants avoided passing over or within the limits of the turnpike road, whenever it could be avoided without great inconvenience and almost ruinous expense; and that no other route along White River for the rail road could have been adopted, without greatly increased expense and difficulty. It is admitted by the plaintiffs, that the proceedings of the defendants in locating their road were regular, if they might locate it along White River, except in so far as they have encroached upon the plaintiffs' turnpike road. Since the filing of the bill the rail road has been in

75

the process of construction; and the defendants have offered to agree with the plaintiffs upon the damages done to their road, and failing to do so, have caused their damages to be appraised by the Rail Road Commissioners; and from their appraisal the plaintiffs have appealed to the county court, where the appeal is now pending. The ground, upon which the plaintiffs claim relief, is, that the defendants have no right to build their road in such manner, as to cross or touch upon the limits of their turnpike road.

The first objection to the right of the defendants thus to construct their road rests upon an alleged want of constitutional power in the legislature of the state, to confer authority on the rail road company to take the plaintiffs' property for the use of their rail road. It is said, that the charter to the plaintiffs was a contract of the state with the turnpike corporation, which would be impaired by the execution of the grant to the defendants, and that such grant to the defendants cannot therefore be carried into effect, but in violation of that clause of the tenth section of the first article of the Constitution of the United States, which prohibits any state from passing " a law impairing the obligation of contracts."

Upon this question it is deemed sufficient to say, that it now appears to be too well settled by authority to be controverted, that there is no implied contract by the state, in a charter of a turnpike or other private corporation, that their property, or even their franchise itself, shall be exempt from the common liability of the property of individuals to be taken for the public use; that it may be taken, on proper compensation being made; that a rail road is an improved highway, and that property, taken for its use by authority of the legislature, is property taken for the public use, as much as if taken for any other highway; and that the legislature may delegate its powers to a rail road corporation, to take private property for public use in the construction of their rail road, as well as to a turnpike corporation to take the like property for the public use in the construction of a turnpike road. *Armington* v. *Barnett*, 15 Vt. 745. *West River Bridge Co.* v. *Dix*, 16 Vt. 446. *Boston Water Power Co.* v. *Boston & Worcester R. R. Co.*, 23 Pick. 360. *Enfield Toll Bridge Co.* v. *Hartford & N. Haven R. R. Co.*, 17 Conn. 454.

It appears, also, to be equally well settled, that where there has been a legislative grant to a private corporation to erect a bridge,

turnpike, or other public convenience, which is not in its terms exclusive, there is no constitutional obligation on the legislature,— however strong a moral one there may be,—not to grant to a second corporation the right to erect another bridge, or turnpike, for a similar purpose, to be constructed so near the former as greatly to impair, or even to destroy, the value of the former ; and this, with- out making compensation to the first corporation for the consequen- tial injury. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420. *Enfield Bridge Co.* v. *Hartford & New Haven R. R. Co.*, 17 Conn. 454. *Mohawk Bridge Co.* v. *Utica & Schenectady R. R. Co.*, 6 Paige 544. It is therefore unimportant to inquire, whether the defendants' rail road charter contains any provision, by virtue of which the plaintiffs' corporation can obtain compensation for an injury to their franchise, by the diversion of travel from their turn- pike road; and we have not looked into the defendants' charter with a view to determine that question.

The plaintiffs' bill does not, however, complain, that the value of their franchise is likely to be destroyed, or impaired, by the diver- sion of the travel from their turnpike to the rail road, or that their right under their charter to maintain a turnpike road and to collect tolls upon it along White River has been in any manner invaded. The injury complained of is an actual encroachment upon the plain- tiffs' real estate,—or interest in real estate,—which they hold under and by virtue of their charter. It is precisely such an injury, as an individual, having a similar interest in real estate, might complain of; and it must be conceded, that the plaintiffs are entitled to the same constitutional protection to their property, that an individual would be. The property of either may be taken for public use by authority of the legislature, if compensation be made therefor, but not otherwise. Constitution of Vermont, Bill of Rights, Art. 2. The question, then, arises, whether the legislature have conferred the power on the defendants to take the plaintiffs' property in the man- ner it has been shown to have been taken, and have provided a compensation therefor?

The defendants' act of incorporation does not *in terms* empower them to lay out their road along the valley of White River, but to construct it from some point on Lake Champlain, up the valley of Onion River, and extending to a point on Connecticut River most

convenient to meet a rail road, either from Concord, New Hampshire, or Fitchburg, Massachusetts.  But it not being shown, that there was any other practicable route to the proper point on Connecticut River, or that the route adopted was an unsuitable or improper one, we think it is to be taken, that the road was properly located in the valley of White River ; and from the evidence it must also be taken, that it was located in the proper place in that valley, unless its location has invaded the legal rights of the plaintiffs.

It being conceded, that the requisitions of the charter, so far as the forms of proceeding were concerned, were pursued in laying out the rail road, the only remaining question is, whether it is to be fairly inferred from the defendants' charter of incorporation, that they might enter upon and cross a turnpike road, making compensation to the turnpike corporation for the injury they should sustain ?

The tenth section of the act of incorporation provides, " that when it shall be necessary, in the construction of the road, to cross any stream of water, water course, *road*, or *way*, the company may construct their rail road across the same, provided said company shall restore the stream, water course, *road*, or *way*, thus intersected, as near as practicable to its former state and usefulness, to the acceptance of the selectmen of the town, where the same is situated."

The language of the section is sufficiently comprehensive to allow an entry of the corporation upon a turnpike road, and it would, indeed, seem to embrace such a road, as well as any other highway. It also provides a compensation for the injury to the way itself, by requiring the company to restore it, as near as may be, to its former state and usefulness.  It is objected, however, that the board of selectmen, though suitable to determine the sufficiency of the restoration of the road, when the public only are concerned, would be an unfit tribunal to decide upon the right, in such case, of a turnpike corporation ; and that therefore the section could not have been intended to apply to the road of such a corporation.  It does not appear to us, that the argument from this provision is entitled to any great weight.  Some tribunal must necessarily be provided ; and the selectmen, being the ordinary representative of the public in regard to highways, might well be supposed to feel a sufficient

interest in the preservation of convenient facilities for public travel, to take care that the road was properly restored.

But if the construction of the tenth section were doubtful, we think the doubt would be removed by reference to the eighth section. That section, after prescribing a mode by which the Winooski Turnpike Corporation should be compensated for the injury to their franchise by the construction of the railroad, provides, that, upon a compliance by the rail road company with the requisitions in regard to such franchise, such company " shall not be subject to any damages or liabilities to the turnpike company, *excepting such as is provided in section ten of the act.*" Thus clearly implying, that the provisions of the tenth section were designed to apply to turnpike roads, as well as to other highways.

This clause of the eighth section may also be considered as implying, that there were other damages, besides those provided for by the restoration of the road under the tenth section, that the turnpike company might be entitled to, if their franchise remained to them ; such, perhaps, as damages to the turnpike company occasioned by the impracticability of restoring the road to its former state of usefulness for travel, as well as for the occupancy of a portion of the land covered by the easement in the turnpike corporation,—which, when the public only were concerned, might be overlooked, but which, in the case of a road owned by a corporation, might be proper to be regarded.

But without such implication, we think the provisions of the charter, prescribing a mode for making compensation by appraisal for injuries to land entered upon by the rail road company, may be fairly construed to apply to the property and interest of a turnpike corporation, in the land embraced by their road and in the road itself, as tangible property. The terms *land* and *real estate,* which are both used in reference to compensation for damages, when found in statutes whose object seems to require it, are often construed as embracing not only the soil itself, but an easement, or other interest, arising out of and depending upon what is termed land in its limited sense. Such is the defined meaning of the terms *land* and *real estate* as used throughout the Revised Statutes ; and a legislative definition having been expressly given them, they may well be considered as retaining that sense in subsequent statutes,

White River Turnpike Co. *v.* Vt. Central Rail Road Co.

unless there is a clear indication to the contrary. Rev. St. chap. 4, sec. 8. *Boston Water Power Co.* v. *Boston & W. R. R. Co.*, 23 Pick. 395. We are therefore satisfied, that the defendants' charter of incorporation did authorize them to enter upon the plaintiffs' turnpike road in the manner they are shown to have done, and did provide a mode for making compensation to the plaintiffs for the injury thereby occasioned to them. We are not called upon to lay down any specific rule for the government of commissioners in making an appraisal of the plaintiffs' damages, and we do not intend to do so. We merely decide, that the commissioners appointed in pursuance of the rail road charter have the power to award to the plaintiffs such damages as they may legally and justly claim.

We are all agreed, that the plaintiffs are not entitled to the injunction prayed for, and that the decree of the chancellor dismissing the bill should be affirmed.