IN THE MATTER OF THE PETITION OF THE NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY,
RESPONDENT, *v.* THE METROPOLITAN GAS–LIGHT
COMPANY, APPELLANT.

*Eminent domain — Depots — for what purpose lands may be taken by railroad company — when lands of corporation may be taken — Public corporation.*

In the city of New York, depots for freight, cattle and live stock are within the purposes for which railroads are constructed; and the lands necessary therefor may be taken by proceedings *in invitum.*

A railroad company may acquire land under the statute for the purpose of approaching structures erected by it for purposes for which the necessary land might have been taken *in invitum.*

*Quære,* whether land might not also be so acquired to approach structures erected on land purchased by it, although they are of such a character that the company could not have taken the land necessary therefor by compulsory proceedings.

To authorize a railroad company to take lands, a reasonable necessity therefor must be shown. It is not, however, a question of possibility, but of strict practicability. A reasonable discretion must be allowed to the officers who locate the tracks.

All lands within this State are subject to the right of eminent domain, and no exemption therefrom grows out of the fact that they are owned by a corporation.

The Metropolitan Gas-light Company in New York is not a *public* corporation, within the sense of that term when applied to that class of corporations which is clothed with power to exercise the right of eminent domain.

APPEAL from an order of the Special Term appointing commissioners to appraise certain lands belonging to the appellant, sought to be taken for the purpose of enabling the respondent to lay its tracks over them, so as to approach its new stock yard in the city of New York.

*E. L. Fancher*, for the appellant. The premises in question, which the railroad company seeks to acquire, are "not necessary for the purposes of its incorporation," nor are they "necessary to the operation of such railroad." (Chap. 237, Laws of 1869.) . The purpose is to aid the cattle yards, abattoir and elevators, whereas lands cannot be taken for a subsidiary or extraordinary purpose. (*N. Y. and H. R. R. Co.* v. *Kip*, 46 N. Y., 552 ; *Rens. and Sar. R. R.* v. *Davis*, 43 id., 146 ; *N. Y. and Canada R. R.* v. *Gunison*, 1 Hun, 496.) The franchise of the gas company cannot be interfered with by a railroad company under the authority of the general law, which authorizes the acquisition of real estate only ; it does not authorize the invasion of a franchise. (*Rens. and Sar. R. R. Co.* v. *Davis*, 43 N. Y., 146 ; *Boston and Lowell Railway* v. *Salem and L. R. R.*, 2 Gray, 1 ; 2 Redfield's Am. R. Cases, 579, 586.) The statutes claimed to authorize the proceeding to take the land applied for, are to be strictly construed against the railroad company, and are not to be extended by implication or construction so as to affect a franchise. (*Rens. and Sar. R. R. Co.* v. *Davis*, 43 N. Y., 137 ; *Webb* v. *Manchester and Leeds Railway Co.*, 1 Eng. Railway Cas., 439 ; *Matter of Utica, etc., R. R. Co.*, 56 Barb., 456 ; *Sharp* v. *Johnson*, 4 Hill, 92–99 ; *Sharp* v. *Spier*, 4 id., 76 ; *Sprague* v. *Birdsall*, 2 Cow., 419.) A power delegated by the legislature to a corporation to take private property for public use, must be strictly pursued. (*Vanwickle* v. *Cam. and Am. R. Co.*, 2 Green [14 N. J. L.], 162 ; *State* v. *Jersey City*, 1 Dutch. [25 N. J. L.], 309 ; *Adams* v. *Saratoga R. R. Co.*, 10 N. Y. [6 Seld.], 328 ; *Vanhorne* v. *Dorrance*, 2 Dall., 304 ; *Bradley* v. *N. Y. and N. H. R. R. Co.*, 21 Conn., 291 ; *Morehead* v. *Little Miami R. R. Co.*, 71 Ohio, 340, 350.) There must be a clear case of public necessity shown before the railroad can invoke the right of eminent domain. (*State* v. *Comms. of Mansfield*, 23 N. J. L. [3 Zab.], 510 ; *The Mayor of Alleghany* v. *Ohio and Penn. R. R.*

*Co.*, 26 Penn., 360, 361; *S. W. Railway Co.* v. *Board of Health*, 4 Ellis & Blackb., 189; *Bennett* v. *Boyle*, 40 Barb., 551; *Varick* v. *Smith*, 5 Paige, 137, 159; S. C., 9 id., 557, 559; *Beekman* v. *Saratoga, etc., R. R. Co.*, 3 id., 45, 73; *Bloodgood* v. *Mohawk and Hudson R. R. Co.*, 18 Wend., 9; *Matter of Albany St.*, 11 Wend., 149; *Matter of John and Cherry Sts.*, 19 id., 659; *Embury* v. *Conner*, 3 N. Y. [3 Comst.], 511; *Nesbitt* v. *Trumbo*, 39 Ill., 110; *Clack* v. *White*, 2 Swan [Tenn.], 540; *Hoye* v. *Swan*, 5 Md., 237; 43 N. Y., 144.)

*Henry H. Anderson*, for the respondent. The uses for which lands are sought by the petitioners, are within the legitimate purposes of their incorporation, and the premises in question are necessary to the furtherance of those purposes. (*Matter of the Petition of N. Y. and H. R. R. Co.* v. *Kip*, 46 N. Y., 546; *Matter of Boston and Albany R. R. Co.*, 53 id., 574.) Reasonable necessity being shown for the acquisition of the property by the petitioners for the legitimate purposes of their incorporation, it was not for the court to inquire as to the extent of their wants, or to determine the location or fix the limits of the lands to be taken. (*Matter of Boston and Albany R. R. Co.*, 53 N. Y., 574; *Matter of N. Y. and H. R. R. Co.* v. *Kip*, 46 N. Y., 546; *Stockton and Darlington R. R. Co.* v. *Brown*, 6 Jur. [N. S.], 1168; *Land* v. *Midland R. R.*, 34 L. J. [Ch.], 276.)

DAVIS, P. J.:

The objection that no attempt was made by the respondents to agree with the appellants for the particular parcel of land described in the petition, does not seem to be well founded. The application in the outset was for a larger portion of the same premises. The appellants refused on such application to negotiate for the sale. Subsequently, as appears by exhibit "F," vice-president Vanderbilt, acting as a committee on the part of respondents, renewed the application, as it seems fair to infer, for the particular piece shown on map, exhibit "H" (which is the parcel described in the petition), and in response received the letter marked exhibit "F," in which the president of the appellants says that he took occasion to submit to his board of directors, at their last stated meeting, "the small

map you were pleased to leave with me, with the explanations you desired me to make to it, as to a purchase of part of our Sixty-fifth and Sixty-sixth street, North river property, adjoining to the property west of your railroad;" and after speaking of other matters connected with the lands, he adds : "As to the piece you desired to purchase, our committee decided that selling any portion would be detrimental to our property, even fatal to our own wants of supplying the district we occupy, at all times, sufficiently with gas."

Afterwards, Mr. Vanderbilt wrote another letter to the president of the appellants, asking him, whether his company declined to sell to the respondents, " *any part* of the block between Sixty-fifth and Sixty-sixth streets, and Twelfth and Eleventh avenues," and saying that he asked this, " as, on reviewing your last letter, I am uncertain whether the meaning that you so decline is intended." This is supplemented by the testimony of Mr. Vanderbilt, that the president of appellants said " distinctly that they did decline selling us any portion of that property." In the absence of any averment in the answer to the petition, that the appellants are, and have been ready and willing to negotiate for the sale of the particular piece described in the petition, we think the objection that no proper attempt has been made to agree upon the purchase cannot be sustained. As we understand the facts, the premises of the appellants are already intersected and crossed by the present tracks (some *five* in number, as shown in exhibit K), of the respondents' railroad, and that the piece of land now sought to be obtained adjoins those tracks on the river side, and are desired for the purpose of laying diverging tracks to enable the respondents to approch their new stock yards on the westerly side, and to reach with facility their extensive river front below and adjoining Sixty-fifth street, and the various extensive improvements contemplated to be constructed on their own lands.

It hardly needs an argument to establish that, in the city of New York, depots for freight, and for the vast numbers of cattle and other live stock that are constantly being transported to the city, are as much within the purposes for which railroads are constructed, and as " necessary to their operation," as depots for the accomodation of passenger traffic. The argument, indeed, is more. strongly in favor of the former : for, while a railroad company might, with

safety to itself, leave its passengers upon a public street to take care of themselves upon their individual responsibility, it could not do so with respect to the animals it transported, but must securely keep them from injuring and annoying the public, until proper delivery to owners or consignees. For the purpose of performing their duty, in this respect with greater facility and safety to the public, and convenience to themselves, the respondents have obtained title to the large tract of land between Fifty-ninth and Sixty-fifth streets by purchase, and without resorting to the exercise of the right of eminent domain. Upon a large portion of this land they have erected extensive cattle depots and yards, and the buildings necessarily connected with such structures, and it is said their design is also to build an elevator, of sufficient dimensions to receive 1,500,000 bushels of grain, and an abattoir sufficient to meet the requirements of the city, in which business is to be carried on by other companies or persons, to whom such establishments are to be leased. If all this be so, the authority of the respondent to acquire by voluntary purchase land for these purposes, is within the power granted by the act, as was held by the Court of Appeals in *Rens. and Saratoga R. R. Co.* v. *Davis* (43 N. Y., 137), and the respondents are not seeking to obtain title by these proceedings to any lands for such purposes. They do not propose to erect an elevator or an abattoir on the appellants' land, but to use it for laying tracks, upon which their cars will run for the purposes of approach to their cattle depots and yards, and to the other structures mentioned; and the use for the public purpose of approaching structures for which lands might have been taken *in invitum*, is none the less so because their cars will at the same time approach structures not within the application of the law of eminent domain. A railroad corporation cannot take land under the right of eminent domain for the purpose of founding a town or city on the plea that when founded it will furnish business to the road of the company. But it is quite another question if the company be the lawful owner of lands on which it has founded and erected a city, whether it may not lawfully acquire, under eminent domain, the lands necessary to connect its tracks, being within its lawful route, with that city. *A fortiori* would the same reasoning apply where the track to be laid was

primarily to erections within the rule of necessity, and only incidentally to those which fall within the class of business conveniences. We are therefore of opinion that the appellants are not protected by the rule that lands cannot be taken "for subsidiary and extraordinary purposes," but that this case is clearly covered by the ruling of the Court of Appeals in the *Matter of the Petition of the New York and Harlem R. R. Co.,* v. *Kip* (46 N. Y., 546).

Upon the point, that the lands proposed to be taken are not necessary, because it might be practicable for the respondents to lay their tracks upon their own lands by adopting another curve, we are not prepared to concur with the appellants' counsel. It is not a question of possibilities nor of strict practicabilities within the opinion of engineers. No route was ever surveyed for a railroad which was not open to such objections, and if the right to take lands was to be determined by conflicting evidence, whether, after all, the tracks might not, with greater or equal convenience, be laid elsewhere, the construction of a road would be attended with the most serious embarrassments. Reasonable necessity must be shown, but a reasonable discretion must be allowed to the officers who locate the tracks of a railroad, for it cannot be presumed that the corporation is unnecessarily incurring heavy expenses in obtaining lands, when those it already has would answer its purposes. We think enough was shown to bring this case within the rule of the authorities in respect to this question. (*Matter of N. Y. and Harlem R. R.* v. *Kip,* 46 N. Y., 546; *Matter of Boston and Albany R. R.,* 53 id., 574.)

It is not sought to interfere with "the franchise of the gas company." That will remain intact, although some portion of the property on which it is exercised be taken for a public use. It may be quite sound to say, that the right of eminent domain does not attach to corporate franchises, and yet be quite unsound to insist that lands held by a corporation are exempt from its exercise. The doctrine insisted upon would create a distinction between the real estate of artificial and natural persons, to the great prejudice of the public. Such distinction does not, and ought not to exist. All lands in the State are subject to its right of eminent domain, whenever the exigency for its exercise arises, and no exemption grows out of the

mere fact of the ownership and use of property by a corporate body. A banking-house, however valuable and useful, must give way before that power, whenever it stands as a barrier in the path of some necessary public avenue. It is another question how far lands, already devoted to public uses and held for that purpose, can be taken under the right of eminent domain for another public use. Even upon that question I am not prepared to say that a use of inferior necessity must not yield to one of clearly superior necessity; as, for instance, a horse railway to the imperious necessity of rapid transit, or a chartered coach line or turnpike to the necessities of a railroad. It was held, in *White River Turnpike Co.* v. *Vermont Central R. R.* (21 Vt., 590), that there is no implied contract by the State, in a charter of a turnpike or other private corporation, that their property, or even their franchise itself, shall be exempt from the common liability of the property of individuals to be taken for public use. (*Matter of Kerr*, 42 Barb., 119.)

But I do not think there is any occasion to decide that question in this case. The appellants, by their charter, are not clothed with power to exercise the right of eminent domain. They do not hold the lands in question under the exercise of any such power, but as a mere private manufacturing corporation. They are claimed to be *quasi public*, because they furnish light to a portion of the public streets, but they would be none the less so if the contract under which they light the streets was taken from them and given to another. Their public character springs out of the nature of the article they manufacture, and the manner in which they deliver it to their customers, through mains and pipes in the public streets, and the legal obligation they are under to furnish to all who desire and who pay for it along the street where their mains are laid. These facts in themselves do not make the defendants a public corporation, within the sense of that term when applied to that class of corporations which is clothed by constitutional legislation with power to exercise the right of eminent domain. I think, therefore, they have no more right to claim that they are shielded from the exercise of that right, from the nature of the article manufactured by them, and the convenience or necessity of its use by the public generally, than any other private corporation, created to make and vend to the public any other articles of prime necessity: a cor-

poration to manufacture cheap bread, for instance, or an ice company in midsummer. " The fact that the public have an interest in the works or the property, or the object of a corporation, does not make it a public corporation." (*Ten Eyck* v. *Delaware and Raritan R. R. Co.*, 3 Harr. [18 N. J. L.], 200; *Firsman* v. *The Belvidere and Delaware R. R. Co.*, 2 Dutch. [26 N. J. L.], 148.)

The courts will act circumspectly and only on strong necessity, in allowing property devoted to uses of great public benefit to be taken; but where such necessity is shown to exist, the power to act seems entirely clear. In this case the property sought to be taken is not, and has never been, in actual use for the purposes of the gas company. Doubtless, the use of their lands in the future, when the appellants come to need them, as they anticipate, will be more convenient without the additional tracks of the railroad than with them; but the railroad now crosses their land with several tracks, and the addition of two or three more, on land adjoining the present tracks, does not strike us as necessarily destructive of the uses to which the appellants wish to put their lands. The injury cannot be, as it seems to us, so greatly enhanced beyond what is already done, that their remaining land becomes useless to them. It is to be presumed that they will be protected to the extent that the act provides for, in their facilities of crossing and enjoying access to and from the divided parcel of their land, by the commissioners, or by the court on the coming in of their report, and this, we think, is all, under the circumstances, they are entitled to claim.

The order appealed from should be affirmed, with ten dollars costs, besides disbursements.

DANIELS, J., concurred.

Order affirmed, with ten dollars costs besides disbursements.