Johnson, J.
This is a petition in error filed in the district court of Erie county, Ohio, to reverse the judgment of the court of common pleas, and by that court reserved for decision here.
On the 23d of December, 1871, the Lake Shore and Michigan Southern Railway Company filed, in the probate court of said Erie county, its statement in writing “to appropriate, for the construction of its railroad, the right and privilege of crossing with its track and way the track and way of the Cincinnati, Sandusky and Cleveland Railroad Company . . . west of the city of Sandusky, where the line of the Lake Shore and Michigan Southern Railroad . . . crosses the said Cincinnati, Sandusky and Cleveland Railroad. . . . The amount of land being a strip of land sixty-six feet in width, one hundred feet in length, across, and at right angles with said track and right of way of the said Cincinnati, Sandusky and Cleveland Railroad. The said corporation — the L. S. & M. S. Ry. Co. — appropriated the following rights and interests, to wit:
“ 1. The right of entering upon said right of way, surveying, marking, laying out a strip sixty-six feet wide across said C. S. & C. right of way, to be owned, occupied, and *607 enjoyed as right of way by the said two railroad corporations jointly with equal joint rights and privileges.
“2. The right of making suitable substructures and super-! structures, and constructing its track on and over said premises, with necessary ditches and culverts.
“3. The right of cutting the iron of said C. S. & C. R. R. at such crossing, inserting therein suitable crossing frogs at the grade of the said C. S. & C. Railroad, to be forever afterward maintained at the joint expense of said two companies. The right of using, in the construction of said railroad track, all materials on said premises, suitable for such purposes.
“The right and interest intended to be appropriated are, the right of using said premises jointly in connection with said C. S. & C. R. R. Co., absolutely and fully as a railroad track, and of appropriating the property, rights, and interests of said C. S. & C. Railroad Company as fully and amply as said L. S. & M. S. Ry. Co. hath or can acquire, the same for such purposes, and the right of maintaining and repairing said railroad track.”
In January, 1872, on a trial before the probate court, the jury assessed defendant’s damages at $10,034.50, and after motion for a new trial was overruled, judgment was entered on the verdict.
This judgment was reversed by the court of common pleas, and the cause was again tried to a jury, with a verdict in favor of defendant for $60, for the property appropriated, and consequential damages to the remaining portion of defendant’s property at $6,500.
The plaintiff, upon his motion for a new trial being overruled, took a bill of exceptions, embodying the evidence and the charge of the court, which presents the questions involved.
On error to the district court, the case was reserved for decision here.
No objection is made to the verdict fixing the compensation for the property taken — that is, the value of the right *608 of way across defendant’s track; but only to that part for consequential damages.
The defendant claimed the right to recover as consequential damages the cost of maintaining and keeping up said crossing, and the expenses incident to it, such as the wages of watchmen, oil, lights, watch-house, etc., which are required in order to comply with the statute. Against the objection of the plaintiff, the court permitted evidence to go to the jury touching these expenses, and charged the jury that they were a proper subject for consideration in estimating defendant’s consequential damages.
Evidence was also admitted, showing the amount of such expenses annually, and what sum of money placed at interest would produce an income sufficient to defray the increased expense of operating defendant’s road.
The evidence being closed, counsel for plaintiffs requested the following charges :
“ 1. That in estimating the damages to said C. S. & C. R. R. Co. the jury should take into consideration any direct damages it may sustain by reason of the appropriation of its property, and this would include : 1. One-half of the value of the land and its embankments; 2. Any damage from cutting its iron.
“ 2. But the jury are not to take into their estimate of damages to said C. S. & C. R. Rl Co. any consequential damages, such as: 1. Expense of keeping a watchman or flagman, or maintaining a target; 2. Any expense in keeping the crossing in repair.
“ 3. The act of the 24th of March, 1860, is a constitutional and valid law, and applies in this case. That it fixed the burdens imposed upon the two roads so crossing, and it also defines how these burdens are to be borne ; and by that act all of the expenses of keeping up the crossing and watchman, or flagman, at the joint expense of the two companies owning said roads. And, therefore, the jury can not take into their estimate of damages in favor of the C. S. & O. R. R. Co., any cost of maintaining said crossing, or of keeping such watchman or flagman.
*609 “ Which charge the court refused to give ; but (having first stated 'that he should call the L. S. & M. S. Ry. Co., the plaintiff, and the C. S.. & O. R. R. Co., the defendant,) did ■ charge the jury as follows :
“ This proceeding was instituted by the Lake Shore and Michigan Southern Railway Company to appropriate the right of way for its road across the road of the Cincinnati, Sandusky and Cleveland Railroad Company at two points; one for the main line of the northern division of the road, and one for a branch of its main line. The application has been withdrawn as to the branch line, and the only matter now in controversy between the parties are those which relate to the crossing for its main line. The fact that the Lake Shoi’e and Michigan Southern Railroad Company is a corporation, and that it has power to make the appropriation that it now seeks to make, are admitted by the defendant. It becomes your duty, therefore, in the first place, to assess the amount of compensation due to the defendants by reason of the appropriation of the property of the defendant here sought to be appropriated. The plaintiff seeks to appropriate, as a way for its road, sixty-six feet in width across a strip of land one hundred feet in width, upon, and along which, defendant’s road is located. It seeks to make this appropriation, subject to the right of the defendant to use the same land, as a way for its use. The value of this piece of land, subject to the right of the defendant to maintain and operate its road across it, and to use it as a way for its road, is the amount of compensation due to the defendant, by reason of the appropriation. That amount is to be awarded to the defendant without deduction on account o.f any benefit from any improvemént made or proposed by the plaintiff". The property actually taken is to be paid for at its value.
“ 2. Having assessed the compensation due to the defendant, for the property taken, it will then be your duty to inquire whether the remaining property of the defendant, a part of which is in this appropriation — that is to say, its road *610 bed, right of way, station grounds, stations, and other property, which go to make up its railroad, and' is used by it, in its corporate capacity, in maintaining and operating its road — is, as a whole, rendered less valuable, by the construction of the plaintiff’s road across its track.
“ The defendant is a common carrier of passengers and property; and if, for the safety of the persons and the property, as such, intrusted to its care, or because the law to that end so requires, it is necessarily, by reason of the construction of plaintiff’s road across its track, in pursuance of the appropriation now sought to be made, put to ■additional expense in maintaining its track, at" the point of crossing, and to guard against collisions between the trains of the road, that fact, and the amount of such additional expense, is to be taken into consideration in determining this question.
“ The legislature of the state, by the statute of March 24, 1860, now in force, has provided that whenever the tracks of two railroads cross each other, ata common grade, the crossing shall be made, kept up, and watchmen maintained, at the joint expense of the companies owning said tracks. The object of this statute, a3 its various provisions indicate, and its title declares, is to prevent collisions on railroads.. Its provisions are in the nature of police regulations, for the conduct and management of railroads, in the circumstances referred to ; and applies in part to the companies themselves, and in part to those in charge of its trains. Regarded as a statute of this character, and having in view the object named, there is no doubt of its validity. It has regard to the safety of persons and property intrusted to railroad companies, and has not, in my opinion, the effect to determine the ultimate rights of the companies concerned, as between themselves. The legislature thought it wise, in consideration of the public interest and ■ safety, to deal in this matter directly with the companies ■ concerned, and to require them, and each of them, to make ■it their business to see that the crossings were properly made, kept up, and watched. They intended so to provide *611 that neither company should be able to say, as between it and the passengers, it was the duty of the other company, and not mine, to see that the crossing was in proper condition, and was carefully watched. This statute, as between the companies concerned and the public, cast this duty upon both.
“ It does not, in my opinion, as applied to this case, have the effect to settle and determine the rights of these companies, as between themselves; and henee, I hold that the expenses, which will necessarily be incurred, by the defendant in complying with the provisions of this statute, with respect to this crossing, are to be taken into consideration in determining whether or not the defendant’s railroad is, or will be, rendered less valuable, in consequence of the construction of plaintiff’s road across the road of the defendant at the point where the appropriation is sought to be made. You are also to consider, in determining this question, the benefits, if any, which the construction of the plaintiff’s road across the defendant’s road, and as contemplated at the time this proceeding was commenced, will be to the road of the defendant.
“ If these two roads are so located that they are competing roads; if the construction of plaintiff’s road will be of no benefit to the road of the defendant, then you have nothing to take into consideration upon this part of the case, except the burdens which the crossing will impose upon the defendant. If, on the other hand, these two roads are so located as •not to come into competition with each other; if they are so located that each operates as a feeder to the other; if it is for the interest of the plaintiff’, or if, in the ordinary course of business, they will necessarily, to a greater or less extent, bring to the defendant’s road, at Sandusky, passengers and freight destined for points on defendant’s line, or beyond defendant’s line; if the new road will furnish a better outlet east or west from the northern terminus of defendant’s road than before existed, or will enable the defendant to put its entire line at better and more profitable use than before, then these facts are to be taken into con *612 sideration by you in determining this question. It is your duty to take the whole subject into consideration — the burdens which the crossing will impose upon the defendant, upon the one hand, and the benefits of the new road, if any, to the road of the defendant; and upon the whole case you are to say whether the defendant’s road is, on the whole, rendered less valuable in consequence, of the construction of the new l’oad across its line. .If you find that it is rendered less valuable, you are to assess the amount, and return that amount as damages in addition to the, compensation for the property taken. If it is not rendered of less value, then nothing is to be added to the compensation which you may find due to the defendant for the property appropriated. You are to look to the testimony, and to all the facts and circumstances in the case, and dispose of the question submitted to you according to the best of your judgment and understanding.”
Two questions are here presented :
. 1. Did the court err in admitting evidence as to the increased expense of operating the railroad to be crossed, occasioned by such crossing ?
2. Did it err in charging the jury that in estimating the consequential damages, the jury should take into account the increased expense in operating the road to be crossed, occasioned by the statute, to prevent collisions at railroad crossings?
3. Did it err in saying to the jury that in ascertaining how much less valuable the property not taken was, they should ascertain how much less valuable the whole of its real property, wherever situate along the line, which constitute the road and .is used by the company in its corporate capacity, as a whole, in prosecuting its business ?
In fact, these questions may be resolved into one, and that is, what is the proper measure of damages in a case of this kind ?
In this connection and as explanatory, the judge said :
“The defendant is a common carrier of passengers and property; and if, for the safety of the persons and prop *613 erty, as such, intrusted to its care, or because the law to that end so requires, it is necessarily by reason of the construction of plaintiff’s I’oad across its track, in pursuance of the appropriation now sought to be made, put to additional expense, in maintaining its track, at the point of crossing, and to guard against collisions between the trains of the roads, that fact, and the amount of such additional expense, is to be taken into consideration in determining this question.”
Again, the jury were told to look to “ the burdens which the crossing will impose upon the defendant, upon the one hand, and the benefits of the new road, if any, to the road of the defendant; and upon the whole case you are to say, whether the defendant’s road is, on the whole, rendered less valuable in consequence of the construction of the new road across its line. If you find that it is rendered less valuable, you are to assess the amount, and return that amount as damages, in addition to the compensation for the property taken. If it is not rendered of less value, then nothing is to be added to the compensation which you may find due to the defendant for the property appropriated.”
The L. S. & M. S. R. W. Co. sought to appropriate “ the right and, privilege of crossing with its track and way, the track and way of the C. S. & C. R. R.that is :
1. The right to enter upon defendant’s right of way and lay out a strip sixty-six feet wide across the same, to be owned, occupied, and enjoyed, as a right of way in common, by tke two railroad corporations, with equal joint rights and privileges.
2. The right of making suitable substructures, superstructures, aud to construct its track across that of the defendant.
3. The right to cut the iron of the defendant’s road, put in frogs, etc., the crossing to be forever afterward maintained at the -joint expense.
To a proper understanding of the questions at issue, it *614 becomes important to inquire as to the relative rights of two railroads as to crossing each other.
Under our statutes, railroad companies are incorporated under general laws, and the charters thus obtained are subject to repeal or to such modification as the legislature may deem proper. (Const., art. 13, sec. 2.)
The rights and franchises granted are subject to all the incidents that necessarily flow from this power to repeal or alter the charter.
The vested right of property which was the subject of condemnation, consisted of a right of way with a track thereon.
This property, as distinguished from the franchise to be a corporation, and to maintain and operate a railroad over it, under the charter, is held by the same tenure as that of all other railroads, and its owner is entitled to compensation for its appropriation, the same as an individual.
The franchise to be a corporation, entitled as such to own a right of way and to operate a railroad thereon, is granted by the state for the public benefit, in consideration of the supposed benefits accruing to the state and its people from the improvement and its use.
The tangible property held for corporate purposes is a means of carrying out the purposes of the corporation.
Each corporation has granted to it so much of the right of eminent domain as is necessary to obtain its right of way and to construct its road.
The charters of these corporations are obtained under a general law, to authorize the creation and regulation of incorporated companies. 1 S. & C. 271.
The fact that one charter is older than another, does not give it exclusive privileges or superior powers in prosecuting its business as public carrier of persons and property.
If the elder company has exercised its power to condemn property for its right of way, and has constructed and is operating its road, that does not withdraw its property from the equal power of condemnation of its right of way, for a crossing, to be enjoyed in common by a junior company.
*615 Such appropriation, to be used on equal and common-terms, does not operate as a subversion or destruction of' the former public use. It is only an increased burden upon its use imposed for public purposes.
We need not now discuss the power of one corporation to condemn for a public use the property of another, for a-different public use, when such second appropriation operates as a destruction of the first. „
All that this case requires us to say is, that as between two railroad corporations under the laws of Ohio, they stand on a perfect equality, as to their powers of condemnation aud of building and operating their roads.
The right of the one to cross the track of the other is as clear and undoubted as was the right of the other, in the first instance, to cross the land of the original owner. They each derive this right by grant from the state- and not by purchase of the other.
In each case the constitution protects the private property by requiring compensation to be paid.
The right of transit across a railroad rests upon the same grounds as that of the right of railroads to cross the canals, rivers, and common highways of the state, and is as important a public use as the right of transit along them.
New channels of trade and commerce and new higtnvays for public travel are essential to the growth and development of the state and the convenience and comfort of its people, and the power of the state to provide them is one of those sovereign powers held in trust for the public welfare, which it has no right to grant away or surrender.
This grant to railroad corporations is for the public accommodation. To assume that the road first located and constructed has the exclusive franchise of operating a road over the point of crossing, and that this right, as well as the property, must be paid for by the second road, does violence to the well settled public policy of the state.
These corporations owe their existence and the right to exercise their franchises and privileges to the principle, that the state may employ such agencies as it may deem proper to pro *616 mote the public welfare. These roads are great public highways, and as such are amenable to such reasonable regulations, not inconsistent with vested rights of private property, as will promote that object.
Numerous instances of such regulations will be found in our statutes. They are more or less onerous, as burdens imposed upon the franchises of the companies and the use of their property; but the sovereign right to impose them upon corporations to the same extent as upon private individuals, can not be disputed.
Under the powers inherent in every sovereignty, the government may l’egulate the conduct of its citizens toward each other, and, when necessary for the public good, the manner in which each shall use his own property where its use is dangerous to the public.
When the owner of property devotes it to a public use, he, in effect, grants to the public an iuterest in such use, and must, to the extent of the use, submit to be controlled by the public, for the common good, as long as he maintains the use. Munn v. Illinois, 94 U. S. C. 113; T., P. &. W. R. W. Co. v. Deacon, 63 Ill. 91; Charles River Bridge v. Warren Bridge, 11 Pet. 420; United States v. Audendo, 6 Pet. 736; Providence Bank v. Billings, 4 Pet. 514; Giesey v. R. R. Co., 4 Ohio St. 324; Little Miami R. R. v. Dayton, 23 Ohio St. 507; Armington v. Barnet, 15 Vt. 745 ; Boston Water Power Co. v. Worcester R. R., 23 Pick. 360; West Pt. Bridge v. Dix, 6 How. 532; Richmond R. R. Co. v. Louisa R. R., 13 How. 71; White River Turnpike v. Vermont C. R. R., 21 Vt. 590 ; Sedgwick on Damages, 442-444.
When both roads are constructed, they are operated under charters granting equal franchises and privileges, and both are alike subject to the obligations that may be lawfully imposed.
When the younger corporation has acquired its right of property iu common with the older in a crossing, they become joint and equal owners, bound by mutual obligations to each other and to the public, to so use this common right as to do no unnecessary harm to the other or to the public.
*617 To each corporation the maxim, “sic utere tuo ut alienum non Icedas,” applies with special force. To enforce the principles of that maxim, and in the legitimate exercise of the police power of the state, the act of March 24, 1860 (S. & C. 872a), was passed.
It is entitled “ an act to prevent collision on railroads within the State of Ohio.”
It recognizes the right of one road to cross another, and provides that where they cross at a common grade, “the crossing shall be made, kept up, and watchmen maintained at the joint expense of the companies owning said tracks.”
It requires all trains or engines passing over said, tracks to come to full stop, not nearer than two hundred nor more than eight hundred feet from the crossing, and not to cross until the signal is given. It prescribes the order of precedence of trains and engines in making such crossings.
It further provides that the same rule shall also apply to the tracks of two connecting railroads, as well as to those crossing, and regulates the mode of running trains by the respective companies at the crossings.
It is here expressly provided that all railroad crossings shall be made, kept up, and watchmen maintained at the joint expense of the companies, without regard to the priorities of either in the location and construction of its road.
¥e think the court erred in charging that this was a regulation as between the'companies and the public, only to prevent either, as between it and its passengers, from shifting the blame on the other; and that the expenses of making, keeping up, and employing a watchman, were to be considered in fixing the consequential damages to the defendant.
We concede the right of the C. S. & C. Co. to have compensation for so much of its track as the L. S. & M. S. Co. appropriates, but we do not concur in the principle that underlies this charge; that is, that the former company, by reason of its priority in this-public use, possesses any paramount or vested privilege to operate its road, over that *618 of the latter, or that it can impose all the burdens of maintaining this crossing upon the road last constructed.
When the appropriation is made, paid for, and put to the new use, both companies stand on a perfect equality as to rights and privileges in the use of the crossing.
While the elder road can demand compensation for its property to the extent of the appropriation, it has no right to demand tribute from the junior road for the enjoyment of the same corporate franchises that it possesses. Each owes its authority to operate its road to the same source, the state; and neither has the right to tax the other for the eiijoynaent of these mutual privileges. It is true, that the crossing imposes a new burden, but it is one to which it is subject by the nature of the case and the terms of its charter.
Every railroad corporation line takes its right of way subject to the rights of the public to have constructed other highways across it when necessary, in the same manner as it is the subject of future taxation or to reasonable regulations in the mode of using its property.
The damages claimed in this case arise from duties imposed equally on these roads by this statute. The object of this statute is twofold: To promote the safety of the lives and property carried over the roads; and to regulate the common use of the crossing, and fix the legal rights and duties of each, in the use of it as a public highway.
The obligations imposed continue so long as there is a joint use-of the property, and they cease when either ceases to exercise its privilege.
It is the intention of the statute to impose the expense of complying with its provisions on both companies alike.
This statute may be repealed, one or the other company may cease to use the crossing, or it may be made on different grades, so as not to come under the statute. And yet the charge of the court assumes that this crossing is a perpetual servitude imposed on a perpetual easement, and the infringement of a vested right iu fee that is to exist forever.
*619 The expenses o'í watchmen are burdeus imposed on the future use of the track. They do not grow out of appropriation of the crossing, nor the construction of the track across it; but because each corporation is engaged in operating a road over that point at the same grade.
It is a burden imposed on the public use, rather than a direct damage to the property, or rather to the easement of the defendant.
It is not like the case where one- only has the exclusive right. It is a case of equal, mutual right to maintain and operate its road, where each is found to so use the common highway so as to do no avoidable harm to the other.
Any other construction of this statute would be in direct conflict with its provisions, which require that crossings, at a common grade, shall be made and maintained as therein prescribed, at the joint expense.
The rule laid down by the court below, would impose such a burden on all new roads, that practically it would be an embargo on their construction.
It would compensate the existing road for all the increased expense imposed by statute, not. for property appropriated or the diminished value of the residue, but for the future use of all its property.
It carries the question of damages into the regions of speculation as to the future, instead of confining it to the present.-
The state owes to its people the duty of providing, either by itself or through such agencies as it may select, public highways for the development of the resources of the state, and for public convenience.
Public policy demands that the performance of this continuing duty, aud the inherent power to perform it, shall not be prevented, impaired, or abridged by its own grants. Our constitution and laws are in harmony with this principle. It is against public policy to grant exclusive privileges or franchises for public purposes. If the road first constructed has a vested property in the right to operate a railroad at *620 that point, then it has an exclusive privilege in a public use.
In Boston and Albany R. R. Co. v. The Village of Greenbush, 5 Lansing, 461, which was an action to enjoin the village from running a highway across the railroad track, without compensation, under legislative acts for that purpose, it was'held that it was not in conflict with the constitution prohibiting the taking of private property for a public use without just compensation, where the charter of the railroad company contained a reservation of the right to alter, modify, or repeal it.
It is there said: “ The right to hold lands by railroad corporations in this state is not an unqualified right, but is limited by express provisions of the statute; and its title is declared to be for the uses of its incorporation, and to be held for the purposes of its grant.
“The power conferred upon the plaintiffs to hold land, was by the legislative grant of power to them as a corporation, and the legislature, in the grant, reserved the right to alter, modify, or repeal the charter.” . . . And it was further held that “all real estate acquired by any company for the purposes of its incorporation, should be deemed for a public use.” It was therefore held that the crossing the track by a common highway was not an appropriation of private .property for which compensation must be made.
We cite this case to show the character, of the title which the corporation has in its right of way, conceding that, under the Ohio decisions, compensation must be made for the tangible property appropriated ; that is, for the property it owns, to be used in operating its road, as distinguished from the rights and franchises to operate a railroad.
In The Albany R. R. Co. v. Brownell, 24 N. Y. 345, it was held that the title which a railroad corporation acquires to its right of way is a qualified title, and that being taken for a public use, it is subject to the exercise of all the powers by the state to which the franchises of the corporation are subject.
Boston and Worcester R. R. v. Old Colony R. R., 12 *621 Cush. 650, was a proceeding by one railroad corporation against another for an assessment of damages by reason of the erection of a pier of a bridge on their wharf, and because the bridge erected across the stream for railroad purposes, impeded access to their wharf.
The petitioners were the owners of the wharf, which was used in connection with their freighting business, and was necessary to its proper prosecution as a railroad corporation.
The track of respondent’s road, it was alleged, would impede travel and diminish the profits of petitioner’s business. Evidence was offered to show the inconvenience of the passing trains.
The court charged the jury that the petitioners were entitled to recover for all the injury caused by the location and maintenance of the respondent’s railroad, and for the taking of the land, and for the injury caused by the railroad lying in front of the wharf, and in cutting off access to the same by the track, and for disturbing the petitioner’s right of way in the street, and also for the diminution of the value of the wharf for business purposes by rendering access of the public dangerous or inconvenient.
This charge was held erroneous, the court saying: “ The regulation and enjoyment of these public rights must of necessity have been taken into consideration in making a grant to a railroad company of such specific location, and determine, on the whole matter, whether, upon abalance of convenience and inconvenience, the public good requires it.”
It was further said that petitioners were themselves a railroad corporation, and as such, common carriers, and the fact that as such had a railroad extending far into the interior of the state, and was doing a large and profitable business, was not a proper consideration for enhancing damages. '
In Toledo, Peoria and W. R. R. Co. v. Deacon, 63 Ill. 91, the principle contended for is recognized.
It is there held that “ by the grant of corporate franchises to railroad companies to procure rights of way and. operate their trains by the power of steam, the state does not *622 deprive itself of its inherent power to enact all police laws necessary and proper to protect the life and property of its citizens. By such charters unlimited discretion in the regulation and speed of trains is not conferred. Among the reserved rights, and which must inhere in the state, is the power to regulate the approaches to and the crossing of public highways, and the passage through cities and villages, where life and property are in constant and imminent danger, by the rapid speed of railway trains.
“The exercise of corporate franchises must yield to the public exigencies and the safety of the community.”
Nor does the rule here laid down as applied to a railroad corporation at all differ from that applicable to the use of his property by a private individual, except that the nature of the property and its uses are different.
2. The second question arises on that part of the charge relating to consequential damages wherein the jury are instructed that in determining how much less valuable the defendant’s other property was, b}' reason of the appropriation, they should take into the account the road-bed, right of way, station grounds, and other property, which go to make up its railroad, and used by it, in its corporate capacity, in maintaining and operating its road as a whole, and inquire how much less valuable it is rendered by the construction of plaintiffs’ track across it.
In explanation of this charge, it.is said that defendant is a common carrier of passengers and property, and if for their safety, or because the law so requires, it is necessary, by reason of the construction of plaintiffs’ track across its road, to incur additional expense in maintaining its track at the point of crossing, and to guard against collisions, that fact, and the amount of such additional expense, is to be considered in determining this question.
As to the additional expense required by the statute, nothing need be added to what has already beeu said.
Thejury are further told to take into consideration the burdens imposed by this crossing, and the benefits of the new *623 road, by reason of increased trade or travel, and find if defendant’s road, as a whole, is rendered less valuable.
In substance, this rule involves all the probable consequences to the future business of the corporation, and not damages to the defendant’s qualified title to real estate.
It looks to the burdens imposed on the business of maintaining and operating a railroad, and not to the diminished value of defendant’s tangible property. It involves the idea that damages to its property as a whole, in its general use for its corporate purposes, as enhanced by its corporate franchises, is to be considered, and that the grant from the state to so use it is not subject to the reserved right of the state to construct other highways across it, or to impose regulations in the mode and manner of operating its road.
It assumes that this right of wTay is an absolute and not a qualified title, and that the diminished value to the use of all its easements, along the whole line, if used as part of the whole, is to be considered.
It ignores the fact that the charter under which this property is held and used allows them to hold it for a public use, and that the right to so use this property is not property to be paid for by proceedings to condemn, but a privilege or franchise, subject to reasonable regulations for the public welfare.
As the crossing does not take away any part of these corporate franchises, but only regulates their use for the public benefit, there is no sound reason for giving compensation for anything except the damage to the right of way and road-bed, if any, exclusive of the expense of making and keeping up the crossing and keeping the watchman.
Damages to the trade or business of the defendant are too remote. They depend on contingencies too uncertain and speculative to be allowed, even if the act of 1860 did not govern the case.
¥e cite a few cases in support of this proposition.
In ascertaining the depreciated value of the land out of which the appropriation is made, reference must be had to *624 the immediate consequences, and you can not heap consequences on each other. Sater v. Burlington R. R. Co., 1 Iowa, 386 ; Brannanv. Johnson, 19 Maine, 361.
The present value, in consideration of the extent of the right conferred, and the immediate and necessary consequences which depreciate the property, are only to be considered, Henry v. Dubuque R. R. Co., 11 Iowa, 283; The President, etc. v. Thoburn, 7 S. & R. 15; Watson v. The P. C. R. R., 37 Penn. St. 469.
It is the difference in value of the land, and not the diminished annual rental, that is to determine the damage. Amsden v. The Dubuque R. R. Co., 28 Iowa, 542.
Where a railroad crosses a turnpike, the fact that the future business of the latter will be diminished should be disregarded. Troy and B. R. R. Co. v. The President, etc., 16 Barb. 100.
Damages to a ferry, on the land out of which the right of way for a bridge across a river is taken, can not be considered in assessing damages for the bridge. Richmond v. Rodgers, 1 Duvall, 135.
In the case of the Mount Washington Road, 35 N. H. 134, the land of a Mr. Thompson was condemned for a right of way for a carriage road to the top of the mountain. He was the proprietor of a hotel on the remainder of the land, called the Glen House, with a large income from letting horses to tourists, who desired to ascend the mountain by a bridle path. The commissioners, in making the award, allowed him for the probable injury to his business by reason of the competition of a carriage road to the summit.
The actual damage to Thompson’s land was small, and the principal allowance was for the injury to his business by the proposed road.
It was held, “ That the land-owner should receive compensation for damages done to the land through which the road may be laid out,” and, “ not for any loss or damage he may suffer incidentally resulting/rom, the operation of the road 'when completed.” “ Such remote and consequential damages are not caused by the takiug of the land for the *625 road, but the change which the public improvement introduces into the course of business, and for such damage the public is not bound to make compensation. ' Every man when he embarks in any business must do so at the risk of such changes as time and the progress of the age may introduce.
The damages awarded to the land-owner, are limited to the direct injury done to the land; and he can notas alandowner claim damages for a loss which -he sustains in his-'business by the operation of the road.”
In Stone v. F. P. § N. W. R. R. Co., 68 Ill. 396, it is. said : “ The difficulty of crossing a railroad track in a public street, the detention by trains, the frightening of horses,, the danger to persons crossing the track, and the like, are inconveniences which property-owners on the street havetosuffer, and for which they can not recover.”
The case of Old Colony R. R. v. Plymouth, 14 Gray, 155, was that of a municipal corporation condemning a right of way for a public highway across a railroad track.
The railroad company claimed damages not only for1 taking the right of way across their track, but for increased liability for damages from accidents by collisions or otherwise, for expense of making and maintaining sign-boards-at the crossing, and cattle-guards, planking the track and keeping it in repair, and for increased expense in ringing-the bell as required by law, and for liability of being compelled to build a bridge for the highway under orders from the county commissioners.
It was held, that the railroad was entitled to compensation for the land, for the expense of maintaining railroad signs, cattle-guards, and flooring, and keeping the crossing' in repair, but not for increased liability for accidents, nor expense of ringing the bell, nor for liability to be ordered to build a bridge over the track. Thé several items of damages, except compensation for the land, which are here, allowed, are such as are covered by the act of 1860. These* expenses of making and keeping up the crossing, which *626 were then held proper for allowance, are by the statute of Ohio imposed as a common burden.
In White River Turnpike Co. v. Vermont Central R. R. Co., 21 Vt. 590, it was held, that a railroad corporation might condemn a crossing over a turnpike owned by another corporation upon making compensation for injury to the land-entered upon, which may be construed to mean the interest of the turnpike corporation in the land embraced by their road, and the road-itself as tangible property.
See also Easton v. B. C. M. R. R., 35 N. H. 504;
Aside from the provisions of the act of 1860, this charge is objectionable, because it required the jury to take the whole property of the corporation wherever situate along its line, and which constituted part of its road, and which was used by it in its corporate capacity, and determine its ■diminished value, thus casting the burdens upon the public use of the whole property, upon the plaintiffs.
This wide field of inquiry involves an inquiry into the value of the franchise it holds to use this property, and the probable injuries to their future profits and business of the property as a whole.
The direct and proximate damages to the defendant’s property, by reason of the appropriations, are such as are provided for by the act of .1860.
They include the making and keeping up the crossing, .and the expenses of complying with the regulations imposed by the statute.
As these are to be borne jointly by the railroads using -the crossing, they can not be considered by the jury in assessing the consequential damages due the defendant.
If, in any given case, there are other consequential injuries, not provided for by the act of 1860, incident to the appropriation, they may be considered if they are the cause of present and direct damages to the remaining property.
In this case none such are shown.

Judgment reversed, and cause remanded.